## NEY *v.* SWINNEY.

TRESPASS TO LAND.—*Railroad.*—*Appropriation.*—*Appeal.*—In an action for trespass to land and for an injunction, the defendant answered, that he was acting in behalf of a railroad company that had filed her maps and surveys in the office of the clerk of the circuit court, and had afterwards filed in said office her instrument of appropriation and served a copy on the plaintiff and had applied to the circuit court for the appointment of appraisers, who had been so appointed and had appraised the damages to the land of the plaintiff through which the road passed; that the damages had been tendered to the plaintiff and afterwards paid into court; and that afterwards, within the ten days allowed by law, the plaintiff had filed his exceptions to the award of the appraisers which were still undetermined. On the application for a temporary injunction, the court granted the same, upon the affidavit of the plaintiff that no attempt had been made by the company to purchase from him before condemning.

*Held,* that the filing of the instrument of appropriation and service of a copy were jurisdictional facts which must have been passed upon in favor of the railroad company when the court assumed jurisdiction of the subject-matter, and its action could not thus be questioned collaterally.

*Held,* also, that the plaintiff, having appeared to the proceedings to appropriate his property, and filed his exceptions, and taken his appeal, could not, while those proceeding were pending, seek another remedy by injunction or otherwise.

APPEAL from Allen Circuit Court.

PETTIT, J.—This was an action for trespass to land and for an injunction, by the appellee against the appellant. The answer of the appellant, which was sworn to, and the affidavits set out show the following state of facts:

The Fort Wayne, Muncie, and Cincinnati Railway Company, whose road runs through the lands of the appellee, on the 14th day of June, 1870, filed in the office of the clerk of the Allen Circuit Court, her map and profile of said line, and afterward, on the — day of June, 1870, filed in the office of said clerk, her instrument of appropriation, as required by the fifteenth section of the railroad act, 1 G. & H. 510, and, having served a copy thereof on the appellee, she, on the 23d day of June, 1870, applied to the Allen Circuit Court, then in session, for the appointment of appraisers. Three appraisers were duly appointed, who, under oath,

fixed the damages of the appellee at two thousand dollars, their return being in writing and filed in the court. These damages were first tendered to the appellee, and afterward paid to the clerk.

Within the ten days allowed by law, the appellee filed his exceptions to the award, which have never been acted upon, but the cause is still pending in the Allen Circuit Court. The record of this case shows the appearance of the appellee in every stage of the proceedings. A copy of the entire record of these proceedings to appropriate is set out in the bill of exceptions.

The contract for the building of the road was let to the appellant, who immediately commenced work, which the appellee sought, by this action, to stop.

Upon the hearing for a temporary injunction, the appellant justifying under the railroad company, the appellee filed his affidavit denying that any attempt had been made by the company to purchase of him prior to condemning, and the judge, holding such negotiation to be a condition precedent, granted the injunction.

We think the judge erred, for the following reasons:

Aside from all questions of waiver by the appellee, which will be discussed hereafter, the proceedings of the circuit court for the condemnation of this right of way are not to be upset in this collateral way. If there is one thing which must be regarded as settled law in this State, it is that the proceedings of our courts of general jurisdiction, in relation to a subject-matter within that jurisdiction, cannot be questioned collaterally. And this applies not only to those facts actually determined, but equally so to those which, being conditions precedent, the court should have determined before assuming to act in the premises.

The language of Mr. Justice Frazer delivering the opinion of this court in the very thoroughly considered case of *Dequindre* v. *Williams*, 31 Ind. 444, is directly in point. In that case the proceeding to appoint a guardian was *ex parte*. In that case, as in this, there was no written application on

file alleging the jurisdictional facts; in that case certainly the residence of the minors in this State was quite as important a jurisdictional fact as an attempt to negotiate before proceedings to condemn in this case; yet it was held that inasmuch as the probate court had no right to appoint a guardian unless the minors were residents, therefore the court must be presumed to have passed upon that question; and although such finding was contrary to the facts, yet that error cannot be shown in a collateral action.

Now, how is it in the case at bar? In our view, the antecedent negotiation is not a jurisdictional fact. "The power to hear and determine a cause is jurisdiction." *United States* v. *Arredondo*, 6 Pet. 709. "Any movement by a court is necessarily the exercise of jurisdiction." *Rhode Island* v. *Massachusetts*, 12 Pet. 718; *Dequindre* v. *Williams*, 31 Ind. 444. In this proceeding to condemn, there were just two jurisdictional facts, viz.: the filing of the instrument of appropriation, and the service of a copy thereof on the owner of the land; the former bringing the subject-matter, and the latter the person, before the court.

These two facts being shown, the court was invested with jurisdiction; "the power to hear and determine the cause;" to appoint or refuse to appoint appraisers, according to the evidence.

The antecedent negotiation is no more a jurisdictional fact than a demand in a case where it is necessary to a recovery. A demand is in such case a condition precedent, because without it there is no right of action; yet no one would contend that a judgment for the plaintiff in such case, even in a justice's court, could be upset in a collateral action by showing that, in fact, no demand had been made. So, that a debt be due, is a condition precedent to a right of action upon it; but a judgment for such debt, in any court, before due, would not for that reason be void collaterally. Precisely so in the case at bar. The instrument of appropriation being filed, the copy served, and application made, it was then the duty of the court to hear evidence and grant or refuse the

application; and the court having so acted and appointed the appraisers, the inevitable and unimpeachable presumption is that its action was right and upon proof of the necessary facts.

In the case of *Dequindre* v. *Williams, supra,* the residence of the minors in the State was admitted to be a jurisdictional fact lying at the very threshold of the proceeding; and yet the court say, "when the proceeding is of such a character that, before final action, the court should, from the nature of the case, ascertain whether it is such in fact that it has jurisdiction to act as it is invoked to do, and it does so act, the matter cannot be questioned collaterally." See, also, *Green* v. *Beeson,* 31 Ind. 7; *Evansville, etc., R. R. Co.* v. *Evansville,* 15 Ind. 395; *Spaulding* v. *Baldwin,* 31 Ind. 376; *Church* v. *Northern Central Railway ,* 45 Penn. St. 339; *Embury* v. *Conner,* 3 N. Y. 511; *Little Miami Railroad Co.* v. *Perrin,* 16 Ohio, 479; *Pullan* v. *Kinsinger,* 9 Am. Law Reg. (N. S.) 557. This last is a very elaborate opinion by Emmons, United States Circuit Judge for the Southern District of Ohio, in a case of much importance.

Nor will it do to say that the court in this case is exercising a special statutory power, and therefore to be executed strictly according to law to be valid.

This precise point was made and relied upon against the record of the probate court in the case of *Dequindre* v. *Williams, supra,* but the court, after stating that in this country the power to appoint guardians resides primarily in the legislature, say: "If then, the legislature chose to require that this authority should be exercised by a court of superior jurisdiction, the validity of the record of such court, in a given case of the kind, must be tested by the rules ordinarily applicable to its records."

Apply this language to the case in hand. In the language of the Supreme Court of Illinois, "the right of eminent domain, by which private property may be taken for public use, is an inherent sovereign power, and can be exercised *ad libitum* by making just compensation to the

owner.  *  *  *  With this limitation, the manner in which it shall be exercised is in the discretion of the legislature." *Johnson* v. *Joliet, etc., R. R. Co.*, 23 Ill. 202. In the same opinion it is held that the law is valid, though it provides for no notice to the owner, or for swearing the appraisers, or when their return shall be made.

In our State, the legislature, being thus invested with this sovereign power, has seen fit to require that this authority should be exercised by the circuit court; "and the validity of the record of such court in this case must be tested by the rules ordinarily applicable to its records." But if it were admitted (and this is all that is ever claimed on this behalf), that a court, in the exercise of a statutory power, sits as as inferior court, and its records are tested by the rules applicable to the records of such courts; still, all that is required in such case is, that the record shall show the jurisdiction; and as it has already been shown that all of the jurisdictional facts in this proceeding to condemn appear affirmatively in the record, any objection on this score falls to the ground.

See *The Galena, etc., R. R. Co.* v. *Pound*, 22 Ill. 399. This case is directly in point, the statutes of that state and ours being similar on this point. Revised Statutes of Ill. of 1869, 546.

The proceeding to condemn land under the fifteenth section of the railroad act is an adversary proceeding; the filing the act of appropriation and service of a copy upon the owner of the land is notice to the party of the pendency of a suit. When this is done, the court may appoint appraisers. That the other party may appear at this stage of the proceedings, is shown by the seventeenth section, which requires the court to appoint some attorney to appear and protect the rights of absent or unknown owners, who have not appeared, etc. The appellee, as the owner of the land, had not only the right to appear and object to the appointment of the appraisers, or perhaps avail himself of any previous irregularity, if any existed; but the record shows that he did actually appear at

every stage of the proceedings, and is, therefore, concluded by the record.

If, however, a doubt can arise as to the conclusive character of these proceedings to condemn the land, upon general principles, when attacked collaterally, the subsequent provisions of the statute providing for an appeal must remove it. Within ten days after the return of the award, either party may appear and file written exceptions to the award, "and the court shall take such order therein as right and justice may require, by ordering a new appraisement, on good cause shown; Provided, That notwithstanding such appeal, such company may take possession," etc., "and the subsequent proceedings on the appeal shall only affect the amount of compensation to be allowed." 1 G. & H. 511.

There can be no doubt that the legislature intended that a railroad company, which had in good faith proceeded under this act, so far as to have appraisers appointed, the damages assessed and tendered to the owner of the land, or paid to the clerk, should be protected in its possession of the property, and not be harassed by injunctions or other suits, especially after the owner of the land had appeared and filed exceptions to the report.

It will be observed that whatever exceptions have been taken to the award, the only thing the court can do is "to order a new appraisement on good cause shown," and the only question which can be afterwards tried in the cause is the amount of damages or compensation to be paid for the property.

By appearing and making no objection to the appointment of the appraisers, the appellee waived all previous irregularities; but, conceding that the proceedings in the circuit court would have been void for the want of jurisdiction, in case the appellee had not appeared, the most that can be claimed for him is that he had a choice of remedies, the common law remedy by action of trespass and injunction, or the statutory remedy by excepting to the award and taking his appeal.

By filing his exceptions within the time allowed by law, he has elected to take the statutory remedy, and must take it upon the terms prescribed by the statute, viz.: that no other questions than the amount of damages can be tried. The statute was before him, and when he elected to take this statutory remedy, he knew that nothing else could be done by the court than to order a new assessment, and that nothing else could be tried upon the appeal than the question of damages, and that pending such appeal the company might proceed with its work. As a party contracting with an assumed corporation is afterward estopped to deny its corporate character, so by taking this appeal the land-owner estops himself as to every question except the amount of compensation.

If the proceedings on the appeal can only affect the amount of compensation to be allowed, it matters not how irregular the previous proceedings may have been in other respects; and if, notwithstanding, the company may take possession of the property, etc., how can the court deprive it of that right by injunction?

The appeal is still pending in the circuit court for trial. Suppose that case is tried, the damages re-assessed and paid, what is to become of this case? Could the appellee still prosecute this suit to final judgment and recover damages? If not, the pendency of the former proceedings ought to bar this; else he can prosecute two suits for the same cause of action at the same time and in the same court.

The judge first grants an injunction on the ground that the proceedings pending in the Allen Circuit Court for the appropriation of the land were void for the want of jurisdiction, and then modifies his injunction so that it will operate only until the determination of the pending proceedings to condemn the land; thereby seeming to recognize such pending proceedings as the case in which the ultimate rights of the parties, that is, the amount of compensation, is to be determined.

*Dyckman* v. *The Mayor of New York*, 5 N. Y. 434, was an action of ejectment to recover land appropriated for the

waterworks.  Judge GARDINER says, 442, "These matters now insisted upon, as depriving the Vice-Chancellor of jurisdiction, were irregularities which could be, and were waived by the voluntary appearance of the plaintiff." He also holds that the existence of such jurisdictional facts cannot be controverted in a collateral action.

In *The Little Miami R. R. Co.* v. *Perrin*, 16 Ohio, 479, it was held that when land had been entered upon by a company, valued under a judge's warrant, and an appeal taken to the common pleas from the assessment, it was error in the court to quash the proceedings; that though the warrant contain no statement of an attempt to purchase, or that the land was indispensable, etc., the common pleas had jurisdiction of the case on appeal.

This decision was under a statute similar to ours, giving an appeal from the valuation, and "the court, for good cause shown, may order a new valuation," etc.  This statute was held to imply what ours expresses, that no other question than the amount of damages should be tried.

In *Borland* v. *The M. & M. R. R. Co.*, 8 Iowa, 148, it was held that upon an appeal from the assessment of damages to land taken by a railroad, nothing but the question of damages could be tried; that the appeal took the cause upon its merits, and it enabled them, in effect, to set right the consequences of any wrong-doing or partiality of the commissioners or sheriff.  It became immaterial whether they had notice.

In *The M. & M. R. R. Co.* v. *Rosseau*, 8 Iowa, 373, the court ordered certain exceptions to the award to be stricken out, for the reason that the cause on appeal was to be tried on its merits, and not upon exceptions taken to the action of the sheriff or jury, or the incompetency of either of them; that the appeal was from the assessment of the jury, and in the district court the only question is whether the owner is entitled to a greater amount than was awarded to him.  But as it is urged that this exercise of the right of eminent domain being *strictissimi juris*, the statute must be exactly followed, the adjudications with reference to highways, involving the

exercise of the same power, may shed some light on these questions.

The case of *Little* v. *Thompson*, 24 Ind. 146, was an appeal from an order of the board of commissioners opening a highway. The appellant, in the circuit court, attempted to controvert the sufficiency of the notice, and the court held that as to notice, as well as all other jurisdictional facts, no objection can be entertained in the circuit court, or even in the commissioners' court, after the appointment of the original viewers.

Again, in *Wright* v. *Wells*, 29 Ind. 354, which was another case of the same kind, the court cites approvingly the decision in *Little* v. *Thompson*, *supra*, and after holding as in that case, that objections of this kind must be made before the appointment of viewers in the first instance, it is further decided that only two questions can be litigated on such appeal, viz.: the utility of the proposed highway and the claim for damages. To the same effect is the case of *Kemp* v. *Smith*, 7 Ind. 471.

The statute above referred to says, that "subsequent proceedings on the appeal shall only affect the amount of compensation to be allowed." This provision is the law, or it is not. If it is not the law, it must be in consequence of its repugnance to the constitution, but no one has ventured to suggest any such objection. If, then, it is the law, and it has any meaning or effect at all, that meaning and effect is, that when a party files his exceptions to the award, and thereby takes his appeal, he has waived, and is from that time estopped to raise or litigate any question except the amount of compensation. If such is not the effect, then this provision is a nullity; for, without it, if the proceedings were all regular, the appeal could only affect the amount of compensation. Legislation can change this law so as to make it mean something else, judicial interpretation never can. It is hardly necessary to add that, if such is the effect of this appeal in the original proceeding, the record is not less conclusive when attacked collaterally.

The appellee having appeared to the proceedings to appropriate his property for the use of the railroad company, filed his exceptions to the assessment of damages by the appraisers, and taken an appeal to the circuit court, he has chosen his line of action to redress his supposed wrong, and he cannot, while that proceeding is pending, seek another in any court, by injunction or otherwise. The decree granting an injunction is reversed, at the costs of the appellee, with instructions to the court below to dissolve the injunction and dismiss the complaint.

WORDEN, C. J., having been of counsel, was absent.

*W. H. Coombs* and *W. H. H. Miller*, for appellant.