Fee *et al.* *v.* Moore *et al.*

No. 7654.

FEE ET AL. *v.* MOORE ET AL.

74 319
137 247

ATTACHMENT.—*Mortgage.*—*Notice of Pending Suit.*—Where a creditor takes a mortgage upon land which had been levied on in attachment proceedings by other creditors, and which was in the custody of the court, he is chargeable with notice of the litigation pending in relation to such property.

SAME.—*Jurisdictional Fact.*—*Judgment.*—*Collateral Attack.*—The question as to whether claims had been filed under an original attachment proceeding, and had become a part thereof, is a jurisdictional question necessary for the court to determine before it could act, and its determination of that question, and its judgments rendered on such claims, where the court is one of general jurisdiction, can not be collaterally questioned.

SAME.—*Lien of Attaching Creditor and Parties Filing Under his Proceedings.* —Creditors filing under an attachment proceeding acquire all the rights and liens of the attaching creditor, and are entitled, jointly with him, to a *pro rata* distribution of the proceeds of the attached property.

SAME.—*Lien on Property Attached.*—*Debtor can not Encumber Property in Custody of Court.*—The order of attachment, in attachment proceedings under the statute, binds the property of the defendant in the county, and creates a lien thereon from the time it comes into the hands of the sheriff; and the seizure of such property by the sheriff places it in the custody of the court, and thereby prevents such defendant from disposing of the same or creating any incumbrance or lien thereon, until not only the attaching creditor has been paid, but all others filing under the attachment proceedings, and becoming parties thereto, have been fully paid, should there be sufficient property.

SAME.—*Lien of Parties Filing Under Attaching Creditor.*—*Lien of Mortgagee.* —The lien of a creditor filing under an original attachment proceeding against real estate, commenced prior to the execution of a mortgage thereon, by the attachment defendant, is prior and paramount to the lien acquired by the mortgagee upon such real estate, although the date of the filing of such creditor's claim is subsequent to the execution of the mortgage.

From the Steuben Circuit Court.

*J. I. Best, C. A. O. McClellan* and *R. W. McBride*, for appellants.

*J. A. Woodhull* and *W. G. Croxton*, for appellees.

FRANKLIN, C.—Moore and Welch, at the February term, 1878, of the court below, commenced a suit against one Hull

and wife on a note executed by Hull and a mortgage executed by Hull and wife to secure the payment of the note, both dated October 26th, 1876, making appellants Fee and Brown co-defendants therein, alleging that they were junior incumbrancers, and claimed to have a lien upon the mortgaged property. Hull and wife were defaulted.

Appellants answered separately, but similar matters, in defence; each filed a general denial and cross complaint, alleging, in substance, that before the execution of the mortgage one William H. Reed had brought a suit in the Steuben Circuit Court against said Hull, and had caused an attachment to issue therein, by which said mortgaged land was attached on the 20th day of July, 1876; that on the 23d day of October, 1876, and while said attachment proceeding was still pending, the appellant Fee, as alleged in his cross complaint, filed his complaint, affidavit and written undertaking in said cause against said Hull, and became a party to said proceeding, and afterwards, to wit, on the 4th day of May, 1877, recovered a judgment thereon against said Hull, and a finding of said court that said judgment was a part of the proceedings in said Reed attachment case, with an order to pro-rate with said Reed, and other creditors who had become parties thereto, in the money realized from the sale of said land. And appellant Brown alleges, in his cross complaint, that on the 14th day of December, 1876, and while said Reed attachment proceeding was still pending, he filed his complaint, affidavit and undertaking in said cause against said Hull, and became a party thereto; and afterwards, on the 4th day of May, 1877, he recovered a judgment in said proceeding against said Hull, and a finding of said court that said judgment was a part of the proceedings in said Reed attachment case, with an order to pro-rate with said Reed, and other creditors who had become parties thereto, in the money realized from the sale of said land.

Appellees denied these cross complaints, and issues were

thus formed. The cause was submitted to the court, which found for the appellees against the mortgagors and these appellants. Each appellant moved for a new trial, which was overruled, and to which each excepted. The court thereupon rendered a judgment of foreclosure against all of the defendants. The appellants each have assigned as error the action of the court in overruling the motion of each of them for a new trial.

The question presented for decision in this case is the priority of liens. We have carefully examined the record with the bill of exceptions containing the evidence, and make the following summary of the facts: The note and mortgage sued upon were dated October 26th, 1876; the note was executed by Hull, and the mortgage by Hull and wife, to E. H. Moore. The mortgage was in the form of a deed, to become void on payment, and did not contain any independent promise to pay. The note contained no assignment indorsed thereon. The mortgage had the following indorsement thereon, to wit: "I hereby assign the within mortgage, and the note therein secured, to Moore & Welch. E. H. Moore." That Reed commenced an action in attachment against Hull on the 20th day of July, 1876, and on that day the land embraced in the mortgage was attached. This attachment proceeding was pending until the 15th day of December, 1876, when judgment was rendered in favor of Reed against Hull, in said proceeding, and the land attached ordered to be sold. The record is silent as to whether there has been any sale or offer for sale of the lands in controversy, under this original attachment proceeding, or either of said proceedings. That on the 23d day of October, 1876, appellant Fee, filed in said court his complaint, affidavit and written undertaking against said Hull, and obtained judgment thereon against said Hull, on the 4th day of May, 1877; that his said claim was then adjudged to have been filed

under the attachment proceedings of said Reed, and it was ordered that a *pro rata* share of the money realized from the sale of said land be paid to him ; that on the 14th day of December, 1876, the appellant Brown filed his complaint, affidavit and written undertaking in said court against said Hull, and on the 4th day of May, 1877, recovered judgment thereon against said Hull; that his said claim was then adjudged to have been filed under the attachment proceeding of said Reed, and it was ordered that a *pro rata* share of the money realized from the sale of the land should be paid to him. Recapitulation :

Reed attached the land July 20th, 1876 ;

Fee filed his complaint, etc., October 23d, 1876 ;

The mortgage was executed October 26th, 1876 ;

Brown filed his complaint, etc., December 14th, 1876 ;

Reed obtained judgment December 15th, 1876 ;

Fee obtained judgment May 4th, 1877 ,

Brown obtained judgment May 4th, 1877.

Thus the priority of liens is presented, and in order to determine this question it is necessary, first, to inquire whether the claims of appellants were filed and prosecuted under the attachment proceedings of Reed, then pending.

The record evidence of the filing of the papers, with the indorsements thereon, and the docketing of the claims, and also the parol evidence, all of which is contained in the bill of exceptions, show very clearly that appellants intended to and did file their complaint, affidavit and written undertaking under the attachment proceeding of said Reed, then pending in said court, and that their claims were prosecuted to final judgment under said attachment proceeding ; and that the court below, in finally determining said attachment proceedings, did right to adjudge that appellants' claims were filed under, and prosecuted to judgment under, and as a part of, the original attachment proceedings of said *Reed* v. *Hull.*

Counsel have discussed the question as to whether these

are judgments *in rem*. It is very difficult, in some cases, to determine accurately what is a judgment *in rem*. The short definition of the technical phrase, *in rem*, that is sometimes given, that it is in a proceeding against a thing, by which every person is bound, still leaves the troublesome question to be decided, by what kinds of proceedings are all persons bound? We are aware that the authorities have placed a more limited meaning upon the phrase than the mere literal meaning of the words. Drake on Attachments, sec. 5, says that attachment proceedings are in the nature of, but not strictly, proceedings *in rem*. Bigelow on Estoppels, p. 148, says that although proceedings in attachment are not strictly proceedings *in rem*, yet they are sometimes mentioned as such; and an order of sale of perishable goods, levied on by an attachment, operates as a proceeding *in rem*, binding, as it does, all persons. We are unable to see why the sale of perishable goods is any more *in rem* than the sale of those that are not perishable; they are both alike, when levied upon, in the custody of the court, and subject to its control. Freeman on Judgments, sec. 606, in discussing that part of the definition sometimes given, that in order to make it a judgment *in rem*, the *status* of the thing must be determined, says: "A judgment against * a tract of land * for a sum of money, to be satisfied by execution against such * land, * though clearly *in rem*, no more determines a *status* than though the defendant were a person " Then why is not a judgment ordering specific property to be sold to pay a sum of money as much a judgment *in rem?*

In the case of *Truitt* v. *Truitt*, 38 Ind. 16, this court decided that a proceeding to enforce a vendor's lien, and the sale of the property for the payment of a sum of money found to be due, was a proceeding *in rem*.

We have been referred to the 169th section of the code, upon the proposition that no person is bound by the attachment proceeding except those who have notice. This pro-

vision of the code only refers to proceedings before a justice of the peace. *Matlock* v. *Strange*, 8 Ind. 57 ; *Griffin* v. *Malony*, 13 Ind. 402 : *Davis* v. *Warfield*, 38 Ind. 461.

Whether the judgments in the attachment proceedings are to be regarded *in rem* or not, it seems to us that appellee, in this case, ought to be bound by the proceedings. Here, the land upon which he took his mortgage had been levied upon, and was in the custody of the court, for more than three months before he took his mortgage, and appellant Fee's claim had been filed three days before appellee took his mortgage  He ought to be chargeable with notice of the litigation pending, at the date of his mortgage, in relation to the property mortgaged, and of all the rights that could legally grow out of said pending litigation.  And, if he preferred to take his mortgage, instead of filing his claim under Reed's attachment proceedings, it was for him to bear the consequences.

But, even if the attachment judgments are to be considered *in personam*, then they could only be attacked collaterally for fraud or want of jurisdiction.  *Taylor* v. *Elliott*, 51 Ind. 375, and the petition for a rehearing, p. 381, with authorities therein cited.

These judgments have not been attacked for fraud, but it is alleged that the court had no jurisdiction to render them after the original Reed attachment had been disposed of.  That depended upon the facts as to whether they had been filed under the Reed attachment case, and had become a part thereof.  This being a jurisdictional question, and necessary for the court to determine before it could act, and it being a court of general and superior jurisdiction, its determination of that question is final, and can not be questioned collaterally.  *Dequindre* v. *Williams*, 31 Ind. 444 ; *Ney* v. *Swinney*, 36 Ind. 454 ; *Hackleman* v. *Harrison*, 50 Ind. 156.

Persons filing under an attachment proceeding acquire all the rights and liens of the attaching creditor, and are enti-

tled, jointly with him, to a *pro rata* distribution of the proceeds. Even the dismissal of the original attachment proceeding, on account of defective papers, does not discharge the acquired lien of subsequently filed claims thereunder. See the case of *Taylor* v. *Elliott, supra.* And, if this be true under a defective original proceeding that has been dismissed on account of the defect, for a much stronger reason is it true where the original proceeding is valid, and has been favorably prosecuted to final judgment. The reasons for this rule will more fully appear by an examination of the provisions of our statute.

Section 161 of the code reads as follows: "Upon the filing of such affidavit and written undertaking in the office of the clerk, he shall issue an order of attachment, which shall be directed and delivered to the sheriff. It shall require him to seize and take into his possession the property of the defendant in his county not exempt from execution."

Section 165 reads: "An order of attachment binds the defendant's property in the county subject to execution, and becomes a lien thereon from the time of its delivery to the sheriff, in the same manner as an execution."

Section 186 provides, among other things, that "Any creditor of the defendant, upon filing his affidavit and written undertaking, as hereinbefore required of the attaching creditor, may, at any time before the final adjustment of the suit, become a party to the action, file his complaint, and prove his claim or demand against the defendant," etc.

Section 187 reads: " A dismissal of his action or proceedings in attachment by the first attaching creditor, shall not operate as a dismissal of the action or proceedings of any subsequent attaching creditor.".

Section 192 reads: "The money realized from the attachment and the garnishees shall, under the direction of the court, after paying all costs and expenses, be paid to the

several creditors, in proportion to the amount of their several claims as adjusted, and the surplus, if any, shall be paid to the defendant."

According to these provisions, the order of attachment binds the property of the defendant in the county, and creates a lien thereon, from the time it comes into the hands of the sheriff, and requires him to seize an ample amount to pay the attaching creditor's claim; and thus the property of the defendant, in the county, is placed in the custody of the court, through the sheriff, and made subject to the order of the court. And the attachment defendant can make no disposition of nor create any incumbrance or lien thereon, until not only the attachment creditor has been paid, but he, with all subsequent attaching creditors filing thereunder and becoming parties thereto, have also been fully paid, should there be sufficient property of the defendant to pay the same. And whatever is realized from the attachment proceedings is required to be divided, *pro rata,* among all the attaching creditors, each getting his full share. And any creditor refusing, neglecting or failing to file thereunder, can not acquire, after the order of attachment comes into the hands of the sheriff, any prior lien; and if he omits to file under and become a party to the attachment proceedings, he has no right to complain, even if he fails to get a *pro rata* share of the property attached, or the proceeds thereof.

Appellants, by their attachment proceedings, acquired a lien upon the attached property, of the date of the original attachment writ coming into the hands of the sheriff, in the Reed proceeding, to wit, July 20th, 1876; and the same is prior and paramount to appellees' mortgage lien.

The court below erred in giving appellees' mortgage lien priority to, and a preference over, appellants' attachment liens; for which the judgment ought to be reversed.

PER CURIAM.—It is therefore ordered, upon the foregoing

opinion, that the judgment below be, and it is hereby, in all things, reversed, at the costs of appellees, and that the cause be remanded to the court below for further proceedings, in accordance with this opinion.