AMERICAN CAR AND FOUNDRY COMPANY v. SMOCK.

[No. 6,864. Filed May 13, 1910. Rehearing denied November 29, 1910. Transfer denied June 30, 1911.]

1. COMPROMISE.—*Contracts of.*—*Contradicting.*—*Oral Evidence.*—The execution of a receipt in settlement of a negligence case, in form: "I, [plaintiff], in full accord and satisfaction of such disputed claim do hereby acknowledge the receipt of the sum of $350 to me in hand paid by [defendant] * * * from any and all actions, causes of action, claims and demands, for, upon, or by reason of, any damage, loss, injury, or suffering which hereafter may be sustained by me * * * in consequence of such accident and injury," does not preclude the plaintiff from proving by oral evidence that an agreement to give him work was also a partial consideration for such release, the consideration stated being a recital. pp. 360, 371.

2. APPEAL.—*Weighing Evidence.*—*Verdict.*—Where the evidence as to the facts is conflicting, the verdict is conclusive on appeal. p. 362.

3. CONTRACTS.—*Avoidance.*—*Election.*—Where a person has an option to avoid a contract, his election to avoid must embrace the entire contract, and he cannot avoid the objectionable parts and affirm the favorable ones. p. 362.

4. CONTRACTS.—*Ratification.*—*Disaffirmance.*—A person cannot ratify a contract and afterwards disaffirm it. p. 362.

5. PRINCIPAL AND AGENT.—*Ratification.*—*Authority.*—Whether the general superintendent of a manufacturing company and the agent of a liability company were authorized to settle with an injured servant by paying him a certain sum and by agreeing to give him employment is immaterial, where the manufacturing company is pleading the payment of such sum as a complete discharge of the liability. p. 362.

6. ELECTION.—*Inconsistent Positions.*—Where a person has a right of election between inconsistent positions, he will be restricted to that first chosen. p. 363.

7. COMPROMISE.—*Election.*—*Discharge.*—*Estoppel.*—Where a defendant pleads in discharge of a liability a purported complete release which is asserted by the plaintiff to be only a partial release, the defendant is thereby estopped to question the release as it was actually made. Rabb, J., dissents. p. 363.

8. CONTRACTS.— *Discharge.*— *Action.*— *Answer.*— *Reply.*— *Corporations.*—In an action upon a contract presumably executed by a corporation in discharge of an alleged liability, such corporation may answer a want of authority on the part of the alleged agent who executed the contract, and, in such event, the plaintiff, if he succeeds, is required to reply the facts showing such agent's authority. p. 371.

From Hendricks Circuit Court; *James L. Clark,* Judge.

Action by W. Albert Smock against the American Car and Foundry Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*J. W. Hutchinson, W. A. Ketcham, R. M. Ketcham* and *H. S. Landers,* for appellant.

*Salem D. Clark* and *Brill & Harvey,* for appellee.

ROBY, J.—Appellant is a corporation owning and operating a manufacturing establishment at Indianapolis. Appellee was employed by it as a carpenter, his work being connected with the building of cars. His hand was injured on April 2, 1906, while in appellant's service. He subsequently made a claim against the company

on account of such injury, and thereafter executed an instrument in terms as follows:

"Whereas, on or about April 2, 1906, an accident occurred resulting in bodily injury to W. Albert Smock, of Indianapolis, Indiana; whereas, said W. Albert Smock has made a claim on the American Car and Foundry Company for money compensation for such injury, asserting that said American Car and Foundry Company is legally liable for said accident and injury, which said legal liability said American Car and Foundry Company expressly denies: Now therefore, I, said W. Albert Smock, in full accord and satisfaction of such disputed claim, do hereby acknowledge the receipt of the sum of $350, to me in hand paid by said American Car and Foundry Company, and in consideration thereof, I, said W. Albert Smock, do hereby remise, release and forever discharge the said American Car and Foundry Company, its successors and assigns, from any and all actions, causes of action, claims and demands, for, upon, or by reason of any damage, loss, injury or suffering which heretofore has been, or which hereafter may be, sustained by me, said W. Albert Smock, in consequence of such accident and injury. In witness whereof I have hereunto set my hand and seal this 5th day of July, 1906.

W. A. Smock.

Signed, sealed and delivered in the presence of L. L. Asham, attorney for W. A. Smock.
Burr J. Scott.''

It is averred in the complaint, with a wealth of detail, that, in addition to the payment of the sum specified therein, appellant agreed to take appellee into its employ at $15 a week as soon as he was able to work, and keep him in its employ during the remainder of his life. The action is to recover for the breach of this contract. The issue upon which the case was tried was formed by a general denial. There was a verdict for appellee for $5,000, and judgment accordingly.

Appellant's position is that the consideration stated in the instrument heretofore set out is in terms contractual, thereby precluding proof of any other or different consideration.

The holding upon this proposition must be against appellant. The instrument contains no promise or engagement on its part making the consideration contractual. *Indianapolis Union R. Co.* v. *Houlihan* (1901), 157 Ind. 494, 54 L. R. A. 787.

The consideration stated is by way of recital, and parol evidence is therefore admissible to show the true consideration. *Stewart* v. *Chicago, etc., R. Co.* (1895), 141 Ind. 55, 59; *Pickett* v. *Green* (1889), 120 Ind. 584, 588; *Kentucky, etc., Cement Co.* v. *Cleveland* (1892), 4 Ind. App. 171.

The facts are similar to those involved in the case of *Pennsylvania Co.* v. *Dolan* (1893), 6 Ind. App. 109, 51 Am. St. 289, which case supports the conclusion here reached. The determination of this question is practically a determination of the appeal. The evidence supports the finding, which goes with the general verdict, in accordance with the averments of the complaint, that appellee released his claim against appellant, in consideration of the payment of $350 and employment during the remainder of his life; and however much controversy there may have been in the trial court as to such fact, it is, at this time, to be taken as an established fact in the case. Appellant has accepted and holds the release so procured. "A man who has his option whether he will affirm a particular act or contract, must elect either to affirm or disaffirm it altogether; he cannot adopt that part which is for his own benefit and reject the rest. One cannot blow hot and cold." Herman, Estoppel §1039. If a party having the right to repudiate or affirm a transaction affirm it he cannot afterward resort to his right of repudiation. That appellant cannot adopt the contract as its own, to the extent that the terms thereof are beneficial, and repudiate the obligation to pay the stipulated consideration, is "entirely too inconsistent with reason to leave much room for dispute." The persons who acted for appellant in the transaction, were the general superintend-

ent of its Indianapolis plant and the agent of a liability insurance company. It is, so far as the point under consideration is concerned, immaterial whether either had actual authority to do so.

A party cannot, either in the course of litigation or in dealings *in pais,* occupy inconsistent positions; and where one has an election between several inconsistent

6. courses of action, he will be confined to that which he first adopts. *Strosser* v. *City of Fort Wayne* (1885), 100 Ind. 443, 452; *Ney* v. *Swinney* (1871), 36 Ind. 454; *Peters* v. *Bain* (1890), 133 U. S. 670, 33 L. Ed. 696, 10 Sup. Ct. 354; *Stuart* v. *Hayden* (1898), 169 U. S. 1, 42 L. Ed. 639, 18 Sup. Ct. 274; *Daniels* v. *Tearney* (1880), 102 U. S. 415, 26 L. Ed. 187.

When appellee brought this action, appellant was called on to answer. If the contract by which the release had been secured was not its contract, that was the time to re-

7. pudiate it. It was then put to an election. *Robb* v. *Voss* (1894), 155 U. S. 3, 42, 39 L. Ed. 52, 15 Sup. Ct. 4. It did not repudiate the contract, but, holding the release thereby secured, it entered into a litigation to determine what consideration appellee was by its terms to have. What that consideration was, became matter of proof. The trial court has settled the issue according to evidence, and appellant must conform to the terms of the contract as it was made, and pay to the appellee the consideration for which he released his claim. Bigelow, Estoppel (5th ed.) 717. The maxim, "He is not to be heard who alleges things contradictory to each other," applies, and lack of authority by appellant's general superintendent cannot be alleged against the fact that it holds the value thereby secured.

The question is not one of ratification by a principal, but of estoppel by election. *Strosser* v. *City of Fort Wayne, supra.*

In view of this conclusion, it is not necessary to discuss

various questions that have been mooted. The amount of recovery is not challenged. The judgment is affirmed.

Rabb, P. J., dissents.

## DISSENTING OPINION.

RABB, J.—I am unable entirely to concur in the views expressed in the foregoing opinion of the court. Appellee's case is predicated on a contract or promise, alleged to have been made by appellant to furnish appellee employment in its service. Appellant is a manufacturing corporation, with its principal offices in the city of St. Louis, and owning and operating two manufacturing plants in this State, one of them located in the city of Terre Haute and the other located in the city of Indianapolis, with a resident manager of its business in this State residing in Terre Haute. Appellee undertakes to sustain his complaint by proof of conversations had with appellant's general foreman, who had charge of its manufacturing plant in Indianapolis, where the injury occurred, out of which the contract is alleged to have grown. It is therefore essential to appellee's case that it appear that this person, with whom the alleged contract is said to have been made, was duly authorized by the company to transact said business. There is no conflict in the evidence in regard to the position in appellant's service of this general foreman, or to the nature of his duty, nor is there any evidence that he was especially authorized by appellant to settle appellee's claim for damages on account of his injury, or to settle any claims against the company for damages of any character; and the question presented is whether the power and authority to make this contract can be implied from the facts and circumstances shown to exist.

When an agency is created by a written instrument, or the facts out of which it is claimed an agency arises are undisputed, the existence of the agency and the scope of the agent's authority are questions of law for the court.

Mechem, Agency §105; 2 Page, Contracts §963; 31 Cyc. 1672, and cases cited; 1 Am. and Eng. Ency. Law (2d ed.) 967.

Here, the evidence shows that Baker, the man with whom appellee claims to have had dealings, had supervision of appellant's manufacturing plant at Indianapolis; that he had authority to employ and discharge servants; that the general direction of the work carried on in the plant was under his charge; that it was a part of his duty to superintend the making of improvements in the plant, the sale for cash of some of its products, and, to a limited extent, the purchase of material to be used in the factory. It does not appear that he had anything to do with administering the business affairs of the company, nor that he had any authority to pay its debts, even where they were liquidated and uncontroverted, nor to settle unliquidated but admitted liabilities, much less to settle and pay demands for which the company expressly denied liability. The authority of Baker was clearly not coëxtensive with the business of his master, and was limited to those matters that were necessary and proper to be done in operating appellant's manufacturing plant in the usual and accustomed way.

The authority of the agent must find its source in the intention of the principal, either express or implied. Where one is given supervision of a manufacturing plant, with implied authority to do all things necessary to be done in the usual and accustomed way and manner of carrying on and operating the plant, will such authority carry with it the authority to allow claims for damages for personal injuries to employes engaged in the work in such plant, and to contract for the settlement of such claims? The allowance of such claims and the settlements therefor are clearly not necessary to carrying on the work of the plant. While the injury grows out of the operation of the plant, the settlement of the question of the legal liability of the company therefor is not one that naturally appertains to the

work of operating the plant, but must, of necessity, belong in that department of appellant's business that has to do with the administration of its affairs, with the management of its finances, with the payment of its debts, and the adjustment of disputed liabilities.

We are cited by appellee to the cases of the *American Tel., etc., Co.* v. *Green* (1905), 164 Ind. 349, and *American Quarries Co.* v. *Lay* (1906), 37 Ind. App. 386, to support the proposition that the jury had a right to infer, from the relation that the evidence showed existed between the company and Baker, that Baker was authorized to make the contract sued on.

We think there is a very marked distinction between the cases cited and this case. In the case of the *American Tel., etc., Co.* v. *Green, supra,* appellee was in appellant's employ, stringing wires upon poles, and while engaged in this work fell from one of the poles and was severely injured. One Tice was a district foreman in appellant's service, and had immediate charge of the work in which appellee was engaged at the time of his injury. Tice procured from appellee a written release of all claims for damages against the company, as follows:

"Know all men by these presents, that I, John H. Green, of Hobart, Lake county, Indiana, in consideration of the sum of $1, and other good and valuable considerations, to me in hand paid by the American Telephone and Telegraph Company, the receipt of which is hereby acknowledged, have remised, released, etc., and by these presents do for myself, my heirs, etc., remise and release and forever discharge said American Telephone and Telegraph Company from any and all manner of actions, causes of action, claims and demands whatsoever, in law or in equity, which against the said American Telephone and Telegraph Company I ever had, now have, or which I, my heirs, executors, administrators hereafter can, shall or may have, for or by reason of any matter, cause or thing whatsoever, and especially for and by reason of the accident which happened to me on January 11, 1902, when I fell from a pole," etc.

Said written release was delivered to said district foreman, and was sent by the district foreman to the company and retained by it. The complaint charged that the written release was procured upon the consideration that appellant pay to appellee his wages, doctor's bill and expenses until he was able to go to work after his recovery from the injury. It was shown in evidence that Tice had general supervision and oversight of the employes in his district; that it was a part of his duty, under special instructions from the company, to settle damage suits resulting from injuries to employes; and that after the contract was entered into it was in part carried out by the company. Upon this state of the evidence, there could be no question that the jury was fully warranted in finding that Tice was authorized by the company to enter into said contract, and that by virtue thereof it obtained and retained appellee's written release. But that is not the case here.

In this case there is no evidence to show that Baker had anything whatever to do with the settlement of disputed claims for damages for personal injuries. He had nothing to do, so far as the evidence was brought to the minds of the jury, with procuring the written release. The written release was procured by the agent of the insurance company, and was sent by him to the company. It contained no allusion whatever to any negotiations or promises made by Baker, and did not indicate to the company that Baker had anything to do with it.

In the case of the *American Quarries Co.* v. *Lay, supra,* the written release executed by appellee to appellant showed on its face that it was executed upon the consideration that appellant sought to recover, and that the release was received and accepted with this recital in it, and was retained by the company.. It was witnessed by the company's superintendent, delivered to him, and his authority to accept the release was not questioned. There was no room in that case to hold that the contract was not the contract of the company, and

that the superintendent of the company, who acted for the company in procuring its execution, was not authorized to do the thing he did, the benefit of which the company accepted and retained.

It is insisted by appellee that appellant has ratified the contract by accepting the benefits thereof, and by retaining them in its possession.    There is no evidence that tends to show that the company, or the managing officers thereof, ever at any time prior to the bringing of the suit, had any knowledge whatever of the promise alleged in the complaint to have been made by its superintendent Baker to appellee. There is nothing shown in the evidence to put it on inquiry; nothing that would justify an inference of any knowledge on this subject.

It is not pretended that appellant held out to the public that said superintendent had power or authority to settle claims of any character against said company; and while appellee insists that the jury might have found, from the circumstances that Baker testified that he made reports to the head office of his doings, that the company was informed of the contract Baker had made with appellee, there is no evidence that Baker reported such transaction. He expressly denies that he made such contract.   It is not reasonable to presume that he made a report of any such character, and appellee knew that the release that he executed would be furnished the company, not through the hands of Baker, but through the hands of Scott, the insurance agent.    He knew that the company held a policy of insurance that indemnified it against liability to him on account of his injury, and it was reasonable to suppose that the company, from the character of the instrument that appellee signed, would suppose that the consideration therein expressed was the full consideration for executing the release.

I cannot agree that appellee, by bringing this action and averring in his complaint that the consideration upon which

his written release was given to appellant, was the payment to him of $350, and appellant's promise to employ him during his life at wages of $15 a week, imposed on appellant a duty to elect whether it would retain the release in question and pay the consideration on which appellee avers it was executed, or offer to surrender the release upon the repayment of $350, when the contract actually made between appellee and appellant provided simply for the payment by appellant to appellee of $350, and which had been fully performed by appellant.

Appellee's action is not brought to recover on the injury, nor is it a suit in equity to set aside the release, on the ground of fraud or mistake. It is simply an action at law, based on the breach of an express contract alleged to have been made by appellant to furnish appellee with employment. Appellant is not asserting any right whatever under the release. It simply denies that it made the promise appellee sues on, and this is the sole issue. The proposition that a person who has entered into a contract with another and fully performed all of its terms, can be put to an election of rights by the claim of the other party to the contract that he was induced to enter into it by some promise made by some one else, of which the contracting party on the other side had at the time no knowledge, and which the party making it had no authority from him to make, is, in my view, radically and fundamentally wrong, and no authority can be found that tends to sustain such proposition.

The cases cited in the opinion of the court, as sustaining this contention, are, to my mind, far away from the question. In the case of *Robb* v. *Voss* (1894), 155 U. S. 3, 42, 15 Sup. Ct. 4, 39 L. Ed. 52, referred to as being in point upon this question to sustain the views of the court, a suit in equity had been instituted, making parties thereto, among others, the grantees named in a certain deed for premises therein described, and among other relief asked was that such deed be declared a mortgage, the amount due thereon fixed, and

the rights of the parties ascertained. Certain attorneys appeared to that suit for the grantees named in the deed, and consented to a decree in the case declaring the deed a mortgage, fixing the amount of the lien, directing the sale of the premises, and the distribution of the proceeds. Under the decree the premises were sold, and, from the proceeds arising from the sale, the amount fixed as the grantee's lien on the premises was paid to the attorneys appearing for them in the suit. The funds thus paid into the attorneys' hands were by them embezzled. Afterwards the grantees in said deed brought an action against the attorneys to recover the money so embezzled, recognizing their authority to appear in the case and to receive the money. This case, without proceeding to judgment, was dismissed, and afterwards the grantees instituted an action against the purchaser at sale to recover the money paid by them to said attorneys. Said action was based on the theory and the alleged fact that the attorneys so appearing in the suit in equity for said grantees did so without authority. It was held that said grantees, having instituted the action against the attorneys to recover the moneys received by them as such attorneys, were thereby precluded from afterward taking the inconsistent position that such attorneys had no authority to appear in the case in question for them, but that is very far away from the question here.

In this case, appellant made a contract with appellee by which, in consideration of $350, appellee released appellant from a certain liability, and so far as appellant knows, $350 is the sole inducement for appellee's entering into said contract. Can it be possible that a secret promise made by some unauthorized person, not brought to the knowledge of appellant when the contract between appellee and appellant is made, can affect the rights and liabilities of either party under the contract, made between themselves? I think not.

Evidence was submitted and instructions were given by the

court to the jury, over appellant's objection, upon the theory that, from the facts disclosed by the evidence, the jury might infer that Baker was authorized by appellant to concede a legal liability to appellee for the injury received by him, and to contract with appellee for its settlement. Such inference was not justified by the facts and circumstances disclosed by the evidence, and the jury should have been so instructed.

## ON PETITION FOR REHEARING.

ROBY, J.—Appellant's counsel have reargued with force and ability their proposition that the consideration expressed in the release was thereby made contractual. This is in fact the pivotal proposition involved, and the conclusion announced on this point was and is unanimous.

Appellee was in the employ of appellant company. He was injured while in such service, and liability or no liability for damages on account thereof was a matter between them.

The complaint counts upon a parol promise averred to have been made in consideration of a written release of liability.

Appellant denied the claim so made. The issue was one of fact.

It being first averred and then established that appellee had surrendered his claim upon the consideration named, and it appearing that appellant had not only accepted the release so procured, but had asserted it at the trial, the doctrine, that "he who derives the advantage ought to sustain the burden," is directly applicable. This is not a new doctrine; it is rather a principle than a doctrine.

A contract for the sale of land made by one who had no authority to act for the owner, who had taken and assigned notes therein provided for, was held to bind the owner. In the case of *Moore* v. *Pendleton*

(1861), 16 Ind. 481, Worden, J., in his opinion upon such facts, adopted the statement of a standard text-writer (1 Parsons, Contracts p. 46), which is as follows: "Generally, if the principal receive and hold the proceeds, or beneficial results, of the contract, he will be estopped from denying an original authority, or a ratification." See, also, *Adams Express Co. v. Carnahan* (1902), 29 Ind. App. 606, 94 Am. St. 279.

Appellant might have set up by special plea that the contract sued on was made by persons who were not authorized to act for it in that behalf. Had it done so, a reply of the facts relied upon to overcome such lack of authority would have been proper. It did not plead such defense, but came into court holding and claiming under the contract, and thereby obviated the need of any further pleading by appellee.

The petition for rehearing is overruled.