## Louisville & Nashville R. R. Co. v. Cox.

(Decided December 6, 1911.)

### Appeal from Kenton Circuit Court
### (C. C. L. & E. Division).

1. Contracts—Master and Servant—Claim for Damages—Mutuality of Contract.—A contract between an injured employee and his employer whereby his claim for damages is settled by the payment of a certain sum of money, and the agreement of the employer to give him a permanent job in a certain position, does not lack mutuality and may be enforced.

2. Same—When Servant May Avoid.—A written contract signed by the servant which purports to be a settlement of his claim, may be avoided by the servant by proof that he was told that it was only a receipt for a certain sum of money, and that he signed it without reading it when told by his superior to do so as it was only a receipt for the money.

3. Same—Permanent Employment.—A contract to give a servant permanent employment in a certain position means a contract to give him the position so long as it exists, and he is able to fill it.

4. Same.—A contract simply to give him a permanent job which is not certain as to the position or the pay he is to receive, is not enforcible.

5. Same—When Servant May Be Discharged.—A servant under such a contract must obey the reasonable rules of the employer and may be discharged if he violates the rules.

6. If he voluntarily quits work for an unreasonable time when not required to do so by disability, this is an abandonment of his contract and releases the master from further liability to employ him.

BENJAMIN D. WARFIELD, I. D. ROUSE for appellant.

F. J. HANLON for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Reversing.

Forest W. Cox was a switchman in the yards of the Louisville & Nashville railroad company at Latonia, and was injured there on December 6, 1894, by getting his hand mashed between two cars, the result of the injury being that he lost the use of that hand. On February 15, 1908, he brought this suit against the railroad company, alleging that on March 22, 1895, he made a settlement with it, by which it paid him $500 and agreed to give him permanent employment as a switch tender in its yards at Latonia as long as it was in business in Kenton County. He alleged that the company had given him the employment as agreed until December 16, 1907, when it discharged him without cause. He prayed judgment against it for the breach of the contract in the sum of $25,000. The defendant filed an answer controverting the allegations of the petition. The case was tried before a jury on November 10, 1910.

At the time that Cox was injured Edward Meyer was general yard master of the Cincinnati terminal which included the yard of Latonia. Ben Arnold was the superintendent of the terminals of the Kentucky division, and general freight agent. After Cox was hurt, Arnold sent a man to see Cox to know whether he was going to sue or would settle, and what he wanted. Cox said that he needed money to live on until he was able to go to work, and that if they would give him that and give him a job that he could do when he got able he would not bring suit against them. Cox suggested that he thought $500 would run him until he got able to go to work, and that he would want a position that he could work at with only

one hand. After this conversation Arnold and Meyer called at Cox's home and Cox says that it was there agreed that the defendant would pay him $500 and give him a permanent position as switch tender as long as they did business in Kenton County. His mother, who was present when the contract was made, says that they agreed to give him $500 to help him along until he was able to go to work and when he got able to work they would give him a permanent job as switch tender. Another witness introduced by the plaintiff, who also heard the contract made, makes this statement: "They said that they would give him a job that he could make a living out of; it looked like they were willing to do what was right. They said that they would take care of him; there was nothing said about what they would give him, that is, how much." Arnold was not introduced as a witness on behalf of the defendant. Meyer, who was the only witness introduced by the defendant as to the contract, said that they paid him $500 in settlement of his claim telling him that that was a full and final settlement. He also made this statement: "He (Cox) said he would like to get a position and I told him he was still employed by the railroad company and that when he got ready for work to report to me, and I would give him employment. * * * There was nothing said by either of us as to permanent employment." He also testified that he had no authority to make a contract for permanent employment. When Cox received the $500 he signed a writing releasing the company from all liability and accepting the $500 in full settlement of his claim against it for damages. But he testified that he signed this paper without reading it at the direction of Meyer, who told him it was only a receipt for $500. Meyer denied this. Cox got so he could go to work on June 13, 1895; he was given a place as switch tender, which he held until May 12, 1897. He says that he then laid off; Meyer says that he then quit the service of the company. He returned to Meyer in October, 1897. There was no vacancy then as switch tender, and Meyer gave him the place of extra switch tender, that is, he worked when any of the regular men were sick or absent. He held the place as extra switch tender until March 1, 1898, when he was discharged as Meyer says. But Cox says he again laid off. In October, 1898, he again went to work for the company as extra switch tender, and worked in this position until May 23, 1899, when he took a position in the round house, where

he remained holding a position as an extra man until August, 1900. He worked as extra switch tender again from August, 1900, up to November, 1901, and in November, 1901, he was made a regular switch tender and held this position until November, 1906, when he was given the position of herder. The position of switch tender pays $1.75 a day; the position of herder $2.20. Meyer says he changed Cox at his request; Cox says the changes were all made by the requirement of Meyer. Cox held the position of herder until his discharge on December 16, 1907. He was then discharged by Meyer because Meyer had been informed that he had been drinking on duty. The herder had charge of an engine in the yards, discharging there the duties of an engineer. On this evidence the court instructed the jury as follows:

"1. If you believe from the evidence that defendant company agreed with plaintiff in settlement of his claim for damages arising out of the injury suffered by him on the 5th day of October, 1894, that it would pay him the sum of $500 and give him steady and permanent employment as a switch tender so long as defendant company engaged in business in Kenton County, Kentucky, you will find a verdict for plaintiff, unless you find for defendant under instructions number two and three.

"2. If you believe from the evidence that defendant company did not agree to give to plaintiff steady or permanent employment as a switch tender so long as defendant was engaged in business in Kenton County; or if you believe from the evidence that Edward Meyer, defendant's servant or employe, did agree as a part consideration for the settlement of defendant's claim that the defendant would give plaintiff steady and permanent employment as long as defendant company was engaged in business in Kenton County, but that said Meyer was without authority to make such an agreement; or if you believe from the evidence that defendant company did agree by and through an officer or agent having authority to make such an agreement that plaintiff was to have steady and permanent employment as a switch tender so long as defendant company was engaged in business in Kenton County, and that the employment of plaintiff by defendant company was pursuant to said agreement, if you believe there was such an agreement, and you further believe that plaintiff at any time during said employment voluntarily gave up the position or employment then held by him with defendant company or was

guilty of drinking while on duty and was for this reason discharged, then in either or any of said events you will find a verdict for the defendant.

"3. The written contract referred to in the evidence and filed as a part of the proof herein is a full and complete settlement and release of all claims for damages against the defendant company arising out of the injury received by plaintiff on or about the 5th day of December, 1894, and you must return a verdict for defendant unless you believe from the evidence that said contract was not read to plaintiff, or read by him, and that defendant's agents represented to him that it contained only a receipt for the sum of $500 and that plaintiff believed and relied upon said representations and that but for said representations he would not have signed said contract.

"4. If you find a verdict for plaintiff you will award him such a sum of money as you may believe from the evidence will fairly and reasonably represent the wages he would have received as switch tender, if so employed since his discharge by defendant company, and which you believe from the evidence, it is reasonably certain he would receive as switch tender, for such time in the future as you believe from the evidence it is reasonably certain he will be capable of performing the duties of a switch tender if so employed; less what you believe from the evidence he has or by reasonable diligence could have earned in other employments, or can in the future by reasonable diligence earn in other employment, but not exceeding in all the sum of $25,000, the amount prayed for in the petition."

The jury returned a verdict in favor of the plaintiff fixing the damages at $6,800. The court refused a new trial and the railroad company appeals.

The defendant insists that the jury should have been instructed peremptorily to find for it because Cox had not returned to it the $500 which he had received; but this is not an action to set aside the settlement for fraud. It is an action to enforce the settlement. It is only insisted by Cox that by fraud a certain writing was obtained from him which he was told was a receipt for the $500 but which was in fact a contract of settlement. The case falls within the rule laid down in McGill v. L. & N. R. R. Co., 114 Ky., 358; Ingram v. Covington, etc., R. R. Co., 28 R., 508; Bramble v. Cincinnati, etc., R. R. Co., 132 Ky., 547.

It is also insisted that under the pleadings it is admitted that the agent with whom the settlement was made had no authority to make it. In a reply the plaintiff averred that the settlement was made with the claim agent of the road. By its rejoinder the defendant denied that the settlement was made with the claim agent or that the claim agent had authority to make the settlement. It is insisted that there being no pleading filed controverting the allegations of the rejoinder, its allegations stand confessed. By section 126 of the Code every material allegation of a pleading with certain exceptions must be taken as true unless specially traversed; but this provision of the Code only refers to affirmative allegations. There is no requirement of the Code that a traverse in a rejoinder which make up an issue must be responded to. The plaintiff had averred in his petition that his contract was made with the defendant. By his reply after the settlement was pleaded in the answer, he set up the fact that the claim agent made the contract with him. He did not in words aver that the claim agent had authority to make it but the defendant in rejoining to the reply assumed that this was the meaning of the allegation and denied the fact. The denial made up the issue as fully as if the fact had been specifically averred in the reply.

It is also insisted that the testimony of Meyer to the effect that he had no authority to employ Cox permanently is uncontradicted and unimpeached, and, therefore, must be accepted as true. But the plaintiff shows that the defendant sent Meyer to make the settlement. If it authorized him to make a settlement, it cannot escape liability for the settlement he made, on the ground that in making the settlement, he exceeded his authority. It was within the apparent scope of his authority to make a settlement, and if he made the settlement as claimed by Cox the defendant is bound by it. As between the principal and the agent, the principal who sends out his agent to make a settlement, may say that the agent exceeded his authority, but as between the person settled with and the principal, the principal can not show the secret instructions he gave as to the character of the settlement he should make. It is evident from the proof that the defendant wished a settlement made with Cox so as to avoid a suit by him to recover for his injuries and there is evidence tending to show that Meyer was

selected by it to make the settlement. It is, if this be true, bound by the settlement he made.

If the contract was as stated by Cox, it did not lack mutuality for he gave a valuable consideration for the defendant's promise to employ him, and it can not after receiving the consideration, repudiate the contract with impunity. The contract as alleged in the petition and proven by the plaintiff himself, falls within the rule laid down in Yellow Poplar Lumber Company v. Rule, 106 Ky., 455. It is not against public policy for a public service corporation to enter into a contract to give an employe permanent employment; for the reason that it is necessarily implied in such a contract that the servant is properly to perform his duties, and may be discharged by the master for any cause that would justify the discharge of a servant employed for a fixed term.

But while we are of opinion that the case was properly submitted to the jury we are also of opinion that the amount found by the jury is excessive and that the verdict is against the evidence. The interest on the sum found by the jury is more than Cox earned for a number of years previous to his final discharge by the railroad company, and is nearly as much per year as he made most of the time.

Cox testifies that he did not leave the service of the railroad company after he began in 1895 until he was discharged in 1907; he says he laid off because his hand hurt him at times but he does not adequately explain why he laid off so long in 1897 or 1898 or why he served without complaint as an extra man when he returned to the service of the company. The weight of the evidence shows that there was an agreement between him and the railroad officials that they were to give him a steady or permanent job. The amount they paid him was so disproportionate to the extent of his injury as to well warrant the jury in concluding that there must have been some other consideration for the settlement. But there is nothing in the evidence to indicate that any of the parties contemplated that the company would quit doing business in Kenton County at any time. It is a public service corporation and can not at pleasure stop serving the public at this point or that; its tracks and switches are permanent structures.

We see no substantial error in the instructions to the prejudice of appellant so far as they go.

The defendant may show that it has a rule providing

for the discharge of an employe who is garnished; that Cox was garnished, and that he was discharged pursuant to the rule. If he was thus discharged, it is a bar to this action just as a discharge for drinking while on duty.

Cox had the right to lay off when he was sick or was disabled by the condition of his hand or otherwise, but he had no right to stop work at pleasure, and then come back after a number of months and demand his place again. On another trial the court will instruct the jury that Cox had a right to lay off while he was sick or disabled so long as the sickness or disability continued, but that if he quit work without such necessity for quitting, or remained away from his work a longer time than was for this cause reasonably necessary, this was a voluntary giving up of his position as set out in instruction No. 2.

It remains to determine what were Cox's rights if the contract was simply to give him steady or permanent employment as switch tender, and not to employ him as long as the railroad company did business in Kenton County. In Perry v. Wheeler, 12 Bush, 541, a resolution of the church provided that Dr. Perry was elected permanently to the rectorship of the church. He insisted that he had a right to retain his position during life as long as he was capacitated to discharge the duties of the office. The court, however, held that the word "permanent" was used as the opposite of "temporary," and that he was simply elected as the regular pastor of the church. In Lord v. Goldsberg, 12 Am. St. Rep., 82, the plaintiff was employed as the permanent attorney of the company but it was held that this indicated no more than a regular employment as contra-distinguished from a special employment. But the principle applied in these cases should not govern in a case like that before us, where the servant relinquishes his right of action in consideration of the promise of permanent employment. In construing a contract the first point to ascertain is what the parties understood by the words employed and as an aid in this respect, the object in making the agreement may be taken into consideration. In a contract of hiring where no definite period is expressed, it is generally presumed to be hiring at will, but if the future employment at a stated sum per year is part of the consideration of a sale, it is not contemplated that a large portion of the consideration was subject to be defeated at the pleasure of the employer. (Jennings v. Brotherhood Accident

Co., 130 Am. St. Rep., 109; Weidman v. United Cigar Store Co., 132 Am. St. Rep., 727.) In many of the cases to which we have been referred, where contracts of this sort have been sustained, the contract was to give employment until some event happened, as for instance as long as the servant may be able to do the work (Smith v. St. Paul R. R. Co., 60 Minn., 330) or until he gets well or so long as the servant lives or the employer is in business. (Pierce v. Tenn. Coal Co., 173 U. S., 1; Yellow Poplar Lumber Co. v. Rule, 106 Ky., 455; Nortonville Coal Co. v. Sisk, 145 Ky., 55.) In Penn. Co. v. Dolan, 6 Ind. App., 109, an injured employe was paid $100 and was promised steady and permanent employment at a compensation equal to that he was then receiving. Holding this contract valid, the court said:

"Words are to be taken in their most usual and known signification, but they get their meaning almost wholly from the time, place, and circumstances under which they are used. The words 'steady and permanent' usually signify stability and duration, and this is especially true when they are applied to the subject matter and the peculiar circumstances under which they are here used. We think, when reasonably construed, they show an agreement on the part of appellant to furnish appellee with employment as long as the latter is able, ready and willing to perform such services as the company may have for him to perform."

A like question was before the Supreme Court of Massachusetts in Carnig v. Carr, 167 Mass., 544. There the contract was to give the plaintiff permanent employment at stipulated wages. The court after laying down the rule that in construing the contract it should consider the circumstances surrounding the making of it, and the situation of the parties at the time, said:

"Looking at the matter in that way, we think that the words would be commonly understood as meaning that so long as the defendants were engaged in enameling, and had work which the plaintiff could do, and desired to do, and so long as the plaintiff was able to do his work satisfactorily, the defendant would employ him, and that in that sense the employment would be permanent; that is, the plaintiff would be under no necessity of looking for work elsewhere, but could rely on the arrangement thus made. So construed, the contract would be capable of enforcement, and there would be no want of mutuality because the plaintiff might not have bound

himself to continue in the defendant's employment."
(To same effect see Harrington v. Kansas City Cable
Co., 60 Mo. App., 223.) The rule laid down in these
cases seems to us sound and if the contract was that Cox
was to have permanent employment as switch tender, it
was necessarily implied that this was to continue only
as long as the road was in business at the yards there,
and so long as Cox was willing and able to render the
services properly. It was also implied that he was to
stand as any other servant and would be discharged for
cause if he did not properly discharge the duties or con-
form to the rules of the company. But it was not nec-
essary that all these things that were implied should be
mentioned in the contract; for what is necessarily im-
plied need not be expressed.

On the other hand, if the contract was simply to give
Cox steady or permanent employment, and neither the
position he was to hold nor the pay he was to receive
was stipulated, this contract would be too indefinite for
enforcement. On another trial the court will so instruct
the jury.

Judgment reversed and cause remanded for a new
trial.