## F. S. ROYSTER GUANO CO. v. HALL.
### No. 3545.

Circuit Court of Appeals, Fourth Circuit.
Jan. 9, 1934.

Charles W. Tillett, Jr., of Charlotte, N. C. (Tillett, Tillett & Kennedy, of Charlotte, N. C., on the brief), for appellant.

Thaddeus A. Adams, of Charlotte, N. C. (J. Louis Carter, of Charlotte, N. C., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal by the F. S. Royster Guano Company, hereafter referred to as defendant, from a verdict and judgment for damages for breach of an alleged contract to furnish life employment to Phillip Hall, an injured employee. The complaint alleged that in the year 1914, as a result of the negligence of defendant, Hall sustained the loss of his right arm; that following his injury he entered into a settlement with defendant under the terms of which, in consideration of the release of his claim for damages, he was paid $700 and promised a "life time job at top wages for common labor"; that he was furnished employment pursuant to the terms of this contract until June, 1932, when he was discharged in violation of its terms. The prayer for relief was that he recover $10,000, less the $700 and other benefits received from defendant, as damages on account of his injury, or, in the alternative, that he recover $5,000 as damages for breach of the contract of life employment.

The answer denied the negligence alleged and pleaded contributory negligence. While

denying plaintiff's version of the contract of settlement, it alleged that defendant had paid plaintiff the sum of $700 in full settlement and compromise of his claim for damages, and that, in consideration of this payment, plaintiff had executed a release, which was pleaded in bar of the action. The answer pleaded also the three-year and ten-year statutes of limitations in bar of the right to recover on either of the causes of action alleged. Plaintiff filed a replication pleading his reliance upon defendant's superintendent in signing the contract of settlement, and averred that, if the release which he had signed was contrary to the contract as alleged in the complaint, it should be set aside for fraud and undue influence. At the beginning of the trial, plaintiff having been required, on motion of defendant, to elect between the cause of action for tort and that on contract, elected to proceed on the latter. Issues were submitted to the jury in accordance with the Code practice prevailing in North Carolina; and in response thereto the jury found that defendant contracted, "for a valuable consideration, to give the plaintiff employment for life at top wages as alleged in the complaint"; that defendant had breached this contract; and that plaintiff was entitled to recover damages of defendant in the sum of $1,500. From judgment on this verdict defendant has appealed. The case as presented to us is narrowed to practically two questions: (1) Whether the alleged contract was void for indefiniteness and lack of mutuality, and (2) whether there was sufficient evidence that it was authorized or ratified by the defendant to take the case to the jury.

The facts are that plaintiff lost his right arm in the service of the defendant under circumstances giving rise to a claim for damages, and that he received in settlement of this claim the sum of $700 and was immediately put back to work by the company at the same rate of wages that he had been receiving. There is no doubt that he signed some sort of release at the time; and, while there is some dispute as to who obtained it, defendant pleads that it paid the $700 to plaintiff and relies upon the release. Plaintiff testified positively that the settlement was made with one Baynard, the superintendent of defendant's Charlotte plant; and, as the trial judge in his charge made a finding in favor of plaintiff dependent upon a finding that the contract was made with Baynard, the verdict must be interpreted as a finding that it was made with him, and not, as contended by defendant, with a representative of the company carrying defendant's liability insurance.

Plaintiff's testimony as to the contract is that, as soon as he got out of the hospital following his injury, he went to defendant's plant where Baynard said to him: "We ought to bring a settlement about your accident; we are all sorry and we have agreed, upon the condition of the company, to pay you the sum of $700.00 and give you a life time job at top wages for common labor. You had better not mess with these lawyers, they don't do a thing but get your money and they will get you out of commission with the boss and the company. If you will stick with me and agree with me we will give you a life time job at top wages and promise to move you anywhere you want to. You can stay here with us and we will give you top wages." Plaintiff says that he at first hesitated about the matter, but finally accepted the proposition; that he met Baynard in the uptown office of defendant, where he signed some sort of instrument, which was not read to him, by "touching the pen"; that he, Baynard, and another man who was present when the instrument was signed, then went to the bank together; and that at the bank the $700 was paid to him. He further testifies that, when he asked Baynard for a copy of the paper, the latter replied: "You don't get any papers. You don't need any. You move around to these small houses and it might get burned up and would be no good to you. This safe is to keep all papers and we can put it here for you. Some time I may go somewhere else or might lose out and that will be here to show the next superintendent what we agreed on." Baynard denied making such statement to plaintiff and denied that it was he who made the settlement; but the instrument signed by plaintiff was not produced and defendant put up no one who claimed to have made the settlement or who testified to its terms.

With respect to the authority of Baynard, it was shown that he was superintendent of the Charlotte plant of defendant, and that he had entire charge of the operations of defendant at the plant. While the company was shown to have had twelve or thirteen plants at different points, Baynard himself testified that there was no one at the Charlotte plant or "connected with the Charlotte plant" that had any higher authority than he. It was further shown that he reported plaintiff's injury to the principal office at Norfolk, and that plaintiff's hospital bill was handled through the Norfolk office. He testified that the company carried insurance, and that any release obtained from plaintiff was obtained by the insurance company; but, as stated above, no agent of the insurance com-

pany was produced who testified to having made the settlement. A draft on the insurance company was introduced; but this draft was for the sum of $747.81, was drawn in favor of the agent of the insurance company, and indicated that it had been cashed, not in Charlotte, but in Richmond, Va. The absence of the release was accounted for on the theory that the records of the insurance company had been destroyed.

 We do not think that the contract can be condemned either as lacking in mutuality or for indefiniteness. It was not lacking in mutuality; for, in consideration of the promise of life employment, the plaintiff surrendered for the comparatively small sum of $700 a claim for damages for the loss of an arm, upon which, if his claim of negligence had been sustained, he might have recovered a much larger amount. The case is radically different, therefore, from one where nothing is given or surrendered in consideration of the promise of permanent employment. And, upon the principle id certum est quod certum reddi potest, the promise of employment for life was sufficiently definite, as was also the promise of top wages for common labor. Pierce v. Tenn. Coal, Iron & R. Co., 173 U. S. 1, 19 S. Ct. 335, 338, 43 L. Ed. 591; Fisher v. John L. Roper Lumber Co., 183 N. C. 485, 111 S. E. 857, 860, 35 A. L. R. 1417. The fair meaning of the promise was that defendant would furnish plaintiff employment so long as he might live at the highest rate of wages which it paid for common labor, with the implied provisos that he perform the work assigned him satisfactorily and that defendant continue in business. Louisville & N. R. Co. v. Cox, 145 Ky. 667, 141 S. W. 389; St. Louis, I. M. & S. R. Co. v. Morgan, 107 Ark. 202, 154 S. W. 518.

In Fisher v. John L. Roper Lumber Co., supra, the contract was much more indefinite than in the case at bar. There, in the settlement of a claim for damages, the injured employee was promised that the company would employ him about the mill in his crippled condition for the balance of his life and would pay him a living wage sufficient for the support of himself and family. In upholding this contract against the contention that it was void for lack of definiteness, the Supreme Court of North Carolina, speaking through the late Judge Hoke, said: "The person, the purpose, and the time of the contract are clearly given, and the only objection at all possible would be as to the difficulty in fixing upon the amount to be paid, or the value of the contract to plaintiff in case of breach. It is said by an intelligent writer on the subject

that the law does not favor, but leans against, the destruction of contracts on account of uncertainty; therefore the courts will, if possible so construe the contract as to carry into effect the reasonable intent of the parties, if it can be ascertained. 6 R. C. L. p. 648. And by another that this intent may be determined at times by reference to extrinsic facts relevant to the inquiry. 1 Page on Contracts (2d Ed.) § 101. Applying these principles, and by reference to the facts in evidence, the capacity of the plaintiff to earn wages, his physical condition, the number of his family, the cost of necessaries for an ordinary livelihood, together with the mortuary tables, also in evidence, would, with other facts, afford data, in our opinion, to enable a jury to come to a reasonable estimate as to the value of the contract held by plaintiff, reduced, of course, by the amount he would be able to earn by diligent effort, and in this aspect the case was considered by the jury and the damages awarded. Contracts not dissimilar have been upheld with us and other courts of approved authority."

In the case of Pierce v. Tenn. Coal, Iron & R. Co., supra, the wages were fixed, but the term of employment was from the date of the settlement for the injury; and this was upheld as against the contention that an employment at will was created. The court said: "The only reasonable interpretation of this contract is that the defendant promised to pay the plaintiff wages at the rate of $65 a month, and to allow him his fuel and the benefit of the garden so long as his disability to do full work continued, and that in consideration of these promises of the defendant the plaintiff agreed to do such work as he could, and to release the defendant from all liability upon his claim for damages for his personal injuries. An intention of the parties that, while the plaintiff absolutely released the defendant from that claim, the defendant might at its own will and pleasure cease to perform all the obligations which were the consideration of that release, finds no support in the terms of the contract, and is too unlikely to be presumed."

That contracts for life employment in consideration of release from claims for damages for personal injuries are not contrary to public policy, nor void for lack of mutuality, and that they will, if possible, be so construed as to come within the rule requiring definiteness, is amply sustained by authority. See, in addition to the cases above cited, Brighton v. Lake Shore & M. S. R. Co., 103 Mich. 420, 61 N. W. 550; Id., 112 Mich. 217, 70 N. W. 432; Stearns v. Lake Shore & M.

S. R. Co., 112 Mich. 651, 71 N. W. 148; Pennsylvania Co. v. Dolan, 6 Ind. App. 109, 32 N. E. 802, 51 Am. St. Rep. 289; American Quarries Co. v. Lay, 37 Ind. App. 386, 73 N. E. 608; American Car & Foundry Co. v. Smock, 48 Ind. App. 359, 362, 91 N. E. 749, 93 N. E. 78; Illinois Cent. R. Co. v. Fairchild, 48 Ind. App. 300, 91 N. E. 836; Carter v. Richart, 65 Ind. App. 255, 114 N. E. 110; Usher v. New York Cent. & H. R. R. Co., 76 App. Div. 422, 78 N. Y. S. 508; Texas Cent. R. Co. v. Eldredge (Tex. Civ. App.) 155 S. W. 1010; Galvin v. Boston El. R. Co., 180 Mass. 587, 62 N. E. 961; Tylee v. Ill. Cent. R. Co., 97 Neb. 646, 150 N. W. 1015; Swanson v. Union Pac. R. Co., 98 Neb. 373, 152 N. W. 744; Jackson v. Ill. Cent. R. Co., 76 Miss. 607, 24 So. 874.

■ On the question of authority, it is to be noted that we are dealing, not with an independent contract for life employment, but with one which was incidental to the settlement of a claim for damages upon which a large verdict might have been recovered against the defendant. And it is to be noted, also, that the contract was not one made by a mere foreman, as in Fisher v. John L. Roper Lumber Co., supra, or by a claim agent of limited powers, but by the superintendent of defendant's plant in the city of Charlotte, who had complete charge of defendant's business at that plant. It may be regarded as settled that a general manager of a business with authority to employ servants does not ordinarily have the authority to enter into contracts for life employment. General Paint Corporation v. Kramer (C. C. A. 10th) 57 F. (2d) 698, 703; Rennie v. Mutual Life Ins. Co. (C. C. A. 1st) 176 F. 202. But, as said by Judge McDermott, speaking for the Circuit Court of Appeals of the Tenth Circuit in General Paint Corporation v. Kramer, supra: "We recognize that there are instances when such contracts are and should be upheld, as, for example, where, as an incident to a settlement for personal injuries, it is agreed to employ the injured one in some capacity not involving managerial responsibility. Pierce v. Tennessee Coal Co., 173 U. S. 1, 19 S. Ct. 335, 43 L. Ed. 591; Louisville & N. R. R. Co. v. Cox, 145 Ky. 667, 141 S. W. 389; Penn. Co. v. Dolan, 6 Ind. App. 109, 32 N. E. 802, 51 Am. St. Rep. 289; Jackson v. Ill. Cent. Ry. Co., 76 Miss. 607, 24 So. 874; Usher v. N. Y. Cent. & H. R. R. Co., 76 App. Div. 422, 78 N. Y. S. 508; Brighton v. Lake Shore & M. S. R. Co., 103 Mich. 420, 61 N. W. 550."

The wisdom of this exception to the general rule is manifest. Such contracts providing employment to laborers who have been injured in the service of the employer do not interfere in any substantial way with the employer's control over his business. They are reasonable, in that they enable the employer to obtain release from claims for damages which may prove expensive to him, while providing a livelihood to employees who have been injured in his service and who, because of such injury, may have difficulty in finding employment elsewhere. See Usher v. N. Y. Cent. & H. R. R. Co., supra. They are not unusual, as the reported cases abundantly witness; and it would be a harsh rule which would deny validity to them and thus enable employers, in disregard of their provisions, to discharge with impunity employees who had surrendered claims for damages in reliance upon them. To say that, where the employer does this, the employee is relegated to his original claim for damages, does not meet the hardship suggested. The employee is still confronted with the release which he has signed; and it may well happen that with the passage of time he may have lost the means of proving his case for damages or may find it barred by the statute of limitations. It is to be noted that in the case at bar, the defendant, while denying the validity of the contract upon which the jury has found that the release was obtained, has pleaded that release, as well as the statute of limitations, in bar of plaintiff's right to recover for his injury. If these pleas should be sustained, and at the same time validity be denied to the contract of which defendant has thus had the benefit, the injured employee would be without remedy.

■■ As shown above, there is no doubt that such a contract may be validly made; and it is hard to imagine anyone whose authority to make it would be more readily assumed than a superintendent in general charge of the plant where the injury was sustained. For handling such matters boards of directors are not ordinarily called into service. A general manager having control over the vast business done by thirteen different plants would not ordinarily give such claims his personal attention. While a claim adjuster might be employed, he would almost certainly work in co-operation with the manager of the local plant; and a reasonably prudent person having no notice to the contrary would be justified in assuming that the settlement of an ordinary claim for personal injuries, being a matter affecting the local business, would be within the authority of the local manager. In this day of far-flung business enterprises,

it is of more than usual importance to emphasize the rule that corporations cannot have the benefit of transacting business through agents without accepting responsibility for acts within the scope of the authority with which such agents have apparently been clothed. The general rule applicable in such cases was stated by this court in Richmond Guano Co. v. E. I. Du Pont de Nemours & Co. (C. C. A. 4th) 284 F. 803, 806, as follows: "The act of an agent within the apparent, but not within the real scope of his authority, is binding on the principal where loss would otherwise result to one who has in good faith relied on such apparent authority. And an act is within the apparent scope of an agent's authority when a reasonably prudent person having knowledge of the usages of the business is justified in supposing that he is authorized to perform it from the character of the known duties. National Safe Deposit Co. v. Hibbs, 229 U. S. 391, 33 S. Ct. 818, 57 L. Ed. 1241; Commercial National Bank v. Shriver (C. C. A. 4th Circuit) 275 F. 12." And the rule was given specific application to the case of the settlement of a claim by an agent given apparent authority to manage the principal's business in a particular locality, in the recent case of General Motors Truck Co. v. Texas Supply Co. (C. C. A. 4th) 64 F.(2d) 527, 529, where this court, speaking through Judge Soper, said: "In the application of this rule, the courts have held that the circumstance that an agent has been given apparent authority to manage or represent the principal's business in a particular locality or section of the country may be taken into consideration in determining whether it is reasonable for one dealing with the agent to assume that he has power to make settlements or to rescind or modify contracts."

■■ But there is more here showing the authority of the superintendent with respect to this settlement than merely the general authority which usually pertains to that position. Some one made a settlement with plaintiff for his injuries and obtained a release. Plaintiff testified that it was the superintendent who did this; and, as stated above, the verdict of the jury must be interpreted as a finding that this was the fact. The defendant cannot accept the fruits of a settlement and then assert that the agent who made it had no authority to settle. We do not mean to say that acceptance and reliance upon a release is, in the absence of knowledge, a ratification of the settlement as made; but it is a recognition of some authority to settle in the one who has obtained it, and the question ■■■ which remains is as to the extent of that authority. The question here, then, is narrowed to this: Whether, under the circumstances disclosed, the superintendent in charge of the local business of defendant, whose authority to settle a claim for personal injuries has been recognized, was clothed with apparent authority to bind the employer by a contract of permanent employment as one of the terms of the settlement. We think that this question must be answered in the affirmative. For cases in which a similar result has been reached see Tylee v. Ill. Cent. R. Co., 97 Neb. 646, 150 N. W. 1015; American Car & Foundry Co. v. Smock, 48 Ind. App. 359, 362, 91 N. E. 749, 93 N. E. 78; Usher v. New York Cent. & H. R. R. Co., 76 App. Div. 422, 78 N. Y. S. 508, affirmed 179 N. Y. 544, 71 N. E. 1141; Pennsylvania Co. v. Dolan, 6 Ind. App. 109, 32 N. E. 802, 51 Am. Rep. 289; Illinois Cent. R. Co. v. Fairchild, 48 Ind. App. 300, 91 N. E. 836; Carter v. Richart, 65 Ind. App. 255, 114 N. E. 110; Swanson v. Union Pac. R. Co., 98 Neb. 373, 152 N. W. 744; Louisville & N. R. Co. v. Cox, 145 Ky. 667, 141 S. W. 389; Brighton v. Lake Shore & M. S. R. Co., 103 Mich. 420, 61 N. W. 550.

■ For the reasons stated, there was no error in refusing to direct a verdict for defendant or in charging the jury that they might consider the evidence as establishing authority or ratification. The request for an instruction that plaintiff was entitled to recover only nominal damages, made on the ground that there was no evidence as to what "top wages for common labor" would be throughout the life of plaintiff, was likewise properly refused. There was evidence as to the wages paid plaintiff up to the time of his discharge, and the jury could properly estimate, in the light of his life expectancy, the damage which he had sustained by reason of his wrongful discharge in his crippled condition. No exception was taken to the court's charge on the measure of damages, which was imminently fair to defendant. The exceptions as to the admission of testimony are without merit. The testimony as to the terms of the contract was properly admitted, for the reasons heretofore stated; and the admission of the sixth paragraph of the complaint could not have affected the result.

The case for the defendant has been presented with great ability; but a careful examination of the record convinces us that there was no prejudicial error in the trial below. The judgment appealed from will accordingly be affirmed.

Affirmed.