David L. SPECKMAN, Appellant
(Plaintiff Below),

v.

CITY OF INDIANAPOLIS, Appellee
(Defendant Below).

No. 49A04–8605–CV–155.

Court of Appeals of Indiana,
Fourth District.

June 15, 1987.

Rehearing Denied July 30, 1987.

☟218(9)

James S. Downing, Peterson Haramy Cline & Shoup, Indianapolis, for appellant.

Gary W. Bippus, Asst. Corp. Counsel, City-County Legal Div., Indianapolis, for appellee.

MILLER, Judge.

David L. Speckman, employed as a director of Brookside Community Center for the City of Indianapolis Department of Parks and Recreation, was discharged by the City following Speckman's voluntary payment of an $88.00 rental fee to the City on February 17, 1982. Speckman claims he paid this sum to the City to prevent prosecution of his assistant, Barry Owens, after Owens allegedly rented the center to a group for social and recreational purposes, collected the fee, and failed to turn the rental fee over to the City. Owens resigned. Speckman brought four claims against the City alleging his discharge without a pre-termination hearing was defamatory and contrary to public policy (Count I), a breach of his employment contract (Count II), and a deprivation of both his property interest in continued employment (Count III) and liberty interest in his name and reputation (Count IV). The City moved to dismiss, under Trial Rule 12(B)(6), Counts II, III and IV and moved to strike, under Trial Rule 12(F), paragraphs related to discharge in Count I. After a hearing, the trial court granted the City's combined motion.[1]

Speckman appeals and argues the grant of the City's T.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief may be granted was erroneous as a matter of law because Speckman established he was not an at-will employee and had an enforceable employment contract which required just cause for discharge. Speckman also argues he established a constitutionally protected property interest in continued employment and therefore due process requires a pre-termination hearing. Further, Speckman argues he established a constitutionally protected liberty interest in his good name, reputation, honor and integrity and due process requires a pre-termination hearing.

We find Speckman's complaint alleged sufficient facts (1) to establish he had a valid, enforceable employment contract, (2) to establish he was not an at-will employee, and (3) to survive the City's 12(B)(6) motion. Therefore, we reverse the trial court's dismissal, and remand with instructions to reinstate Counts II, III, and IV of Speckman's amended complaint.

## FACTS

David L. Speckman was employed by the City of Indianapolis Department of Parks and Recreation and was initially discharged on December 19, 1979. Speckman notified the City of his wrongful discharge claim and negotiations resulted in a settlement agreement signed March 17, 1981. This agreement provided in part:

"NOW, THEREFORE, it is agreed that in consideration of the mutual covenants and agreements herein set forth, the parties hereto do hereby agree as follows:

1. The City of Indianapolis hereby reinstates David L. Speckman as an em-

---

1. After the court granted the City's combined motion, several paragraphs of Count I remained. Thus there was not yet a final judgment in the case. Speckman moved to finalize the court's dismissal under Appellate Rule 4(B). The court denied this motion. Speckman, in order to obtain a final appealable judgment, voluntarily dismissed Count I with prejudice.

In moving for dismissal, Speckman requested and the court ordered retention of allegations in Count I which were incorporated by reference in Counts II, III, and IV. Since Speckman did not pursue Count I at the trial level, he cannot now claim error in interlocutory rulings involving Count I which preceded his dismissal.

ployee of the City of Indianapolis in its Department of Parks and Recreation effective March 9, 1981. David L. Speckman will be employed as Assistant Director, Municipal Gardens, and will be paid an annual salary equal to that paid Director, i.e., presently $13,165.41. In the event the position of Director, Municipal Gardens, becomes vacant during David L. Speckman's tenure of employment with the City of Indianapolis, he shall possess the right of first refusal to the vacancy;

2. Effective with his reinstatement, David L. Speckman shall be credited with 274 hours of accrued sick pay;

3. Effective with his reinstatement, David L. Speckman shall be credited with 93.38 hours of accrued paid vacation time;

4. The City of Indianapolis shall pay to David L. Speckman as damages the sum of $7114.00. David L. Speckman hereby agrees to accept the said sum in full settlement of all claims or demands which he may have against the City of Indianapolis. Upon payment of the full amount hereinbefore specified, David L. Speckman shall execute and deliver to the City of Indianapolis a release of all claims, debts or demands, including specific claims of tortious conduct such as libel, slander and defamation of character, which he may have against the City of Indianapolis from the beginning of time to the day of the date of such release;

5. That upon reinstatement, David L. Speckman shall strive to competently perform the duties required of him as an employee of the City of Indianapolis and the City of Indianapolis shall deal with David L. Speckman as it would any other employee pursuant to the City of Indianapolis Personnel Policies and Procedure Manual;

6. By execution of this Settlement Agreement, the City of Indianapolis does not admit the violation of any law, the commission of any tort or the breach of any contractual term." (Record, p. 22–23).

Speckman returned to work on March 9, 1981 as assistant director of Municipal Gardens and was later promoted to center director at Brookside Community Center. Ten months after returning to work, Speckman was on paid vacation leave from December 5, 1981 through December 22, 1981 when questions arose concerning facility rental and rental fees. Speckman's assistant, Barry Owens, allegedly rented Brookside Center while Speckman was on vacation in violation of City procedures by failing to issue a permit and to turn over the rental fee to the City. When Speckman returned to work, Owens was on paid vacation leave. When Owens returned to work, the Department of Parks and Recreation gave Owens the choice to resign or be prosecuted, and he resigned effective January 29, 1982.

Speckman was a personal friend of Owens and feared Owens would be prosecuted. Three weeks after Owens resigned, Speckman voluntarily came forward and tendered to the City on February 17, 1982 the $88.00 rental fee allegedly withheld by Owens. Speckman's discussion at that time with his supervisors led to an employee disciplinary report, which stated in part:

"Explain specific circumstances requiring disciplinary action.

On Wed. Feb. 17, 1982, all the factors involved in the mishandling of public monies was revealed when David Speckman indicated that he held the $88.00 (illegible) between R.C.A. and Brookside Center. At that time, it was learned that Barry Owens rec'd the money in Dec. 81 and a week or so later supposedly gave it to David Speckman. At this point, Barry Owens, Assistant Director to David Speckman, resigned on Jan. 14, 1982 and now Mr. Speckman is being charged with the following: For not making proper deposit or notifying Supervisor pertaining to the $88.00 and the permit. Comment: David Speckman did turn in the $88.00 and was given a receipt and change for a one-hundred dollar bill on 2–17–82.

Disciplinary Action Taken:

Discharge group III(46) unlawful or negligence of handling public monies. Termination, effective February 22, 1982." (Record, p. 25)

Speckman was discharged for "unlawful or negligent handling of public monies" on February 22, 1982. No pre-termination hearing was held.

During the months of February and March, 1982, the City, through employees Joseph Wynns, Parks Department Administrator of Recreation, and Virginia Burnett, permit office supervisor, made statements to the press and to other employees that Speckman had engaged in dishonest or criminal activity in handling public funds and that he had collected and failed to turn over to the City money from groups renting the Center for recreational and social purposes.

On March 5, 1985, Speckman filed an amended wrongful discharge action alleging he was entitled to, but did not receive, a pre-termination hearing and that his discharge was defamatory and contrary to public policy (Count I) and in breach of the settlement agreement and contrary to the City of Indianapolis Personnel Policies and Procedures Manual (Count II). Speckman also claimed the City's failure to provide him with a pre-termination hearing deprived him of his property interest in continued employment (Count III) and his liberty interest in his good name and reputation (Count IV). Speckman sought reinstatement, back pay and fringe benefits, restoration of seniority, damages for pain and mental anguish, damages to reputation, and costs.

On April 11, 1985, the City filed a Combined Motion to Dismiss and to Strike Portions of Plaintiff's Amended Complaint, a T.R. 12(B)(6) motion alleging Counts II, III, and IV failed to state a claim upon which relief could be granted, and a T.R. 12(F) Motion to Strike Paragraphs 9, 13, and 15 of Count I as redundant, immaterial, impertinent, or scandalous.

The trial court heard oral argument on the City's combined motion to dismiss and strike and granted the motion on May 6, 1985. The order book entry reads:

Parties by Counsel, Arguments heard, Court orders Defendant to produce personnel file of Barry Owens. Court grants Defendant's motion to dismiss as to Counts II, III, and IV of Plaintiff's amended complaint. Court grants motion to strike as to paragraphs #9, 13 and 15 of Count I of Plaintiffs amended complaint. (Record, p. 47)

The trial court denied Speckman's motion to revise the above entry to create a final judgment, then granted Speckman's Motion to Voluntarily Dismiss with prejudice Count I in order to render the trial court's earlier dismissal a final judgment subject to appeal.

### Issues

Speckman now raises three issues on appeal:

I. Whether the trial court's dismissal of Count II for failure to state a claim upon which relief could be granted was erroneous as a matter of law because Speckman's complaint alleged facts which established an enforceable written employment contract with the City.

II. Whether the trial court's dismissal of Count III for failure to state a claim upon which relief could be granted was erroneous as a matter of law because Speckman alleged facts which established a constitutionally protected property interest in continued employment requiring a pre-termination hearing.

III. Whether the trial court's dismissal of Count IV for failure to state a claim upon which relief could be granted was erroneous as a matter of law because Speckman alleged facts which established a constitutionally protected liberty interest in his good name, reputation, honor, and integrity requiring a pre-termination hearing.

### DECISION

Motions to dismiss are not favored by the law. The trial court should consider as true all allegations of the complaint and should view a motion to dismiss in the light most favorable to the non-moving party, resolving all inferences in his favor. A

complaint should not be dismissed unless it appears that the claimant would not be entitled to recover under any set of facts presented by his pleadings. *State v. Rankin* (1973), 260 Ind. 228, 294 N.E.2d 604; *Wilson v. Palmer* (1983), Ind.App., 452 N.E.2d 426; *William S. Deckelbaum Co. v. Equitable Life Assurance Society of U.S.*, (1981), Ind.App., 419 N.E.2d 228, modified in other respects (1981), Ind.App., 422 N.E.2d 301.

## I. *Breach of Employment Contract*

In his amended complaint, Count II, Speckman alleges the settlement agreement created a written employment contract between the parties which incorporates by reference the City of Indianapolis Personnel Policies and Procedure Manual.[2] The Manual requires just cause be established before disciplinary action is taken against any employee. Speckman alleged he was discharged without just cause in breach of this employment contract, and that he was damaged by the discharge. In summary, Speckman argues his complaint was sufficient to survive a T.R. 12(B)(6) motion to dismiss.

The City argues Speckman did not state a contract claim upon which relief could be granted. The City denies that the settlement agreement is a valid enforceable employment contract and argues Speckman is an employee-at-will because: (A) the settlement agreement was not signed by the Mayor as required by IND.CODE 18-1-6-2; (B) no definite term of employment is specified in the contract; and (C) Speckman

failed to append the City's Personnel Policies and Procedures Manual to his complaint.

### A. *Mayor's Signature*

The City claims that even if the settlement agreement would otherwise constitute an express employment contract, it is unenforceable because the Mayor failed to sign it, citing IND.CODE 18-1-6-2[3] which states the Mayor has a duty to sign all written contracts. This settlement agreement was executed by David L. Speckman and by the Director of the Department of Parks and Recreation. In addition, the authorized Assistant Corporation Counsel for the City-County Legal Division for the City of Indianapolis signed the settlement agreement, stating:

> "The legal division, City of Indianapolis, has reviewed the foregoing consent agreement and finds it to be proper in all respects." (R. 24).

While the Mayor had the authority to sign the contract, there is no question that this authority can be delegated to his authorized representatives pursuant to I.C. 36-3-5-2(a) (appointment of department directors); I.C. 36-3-5-4(a)(6) (establishing Department of Parks and Recreation); and I.C. 36-3-5-2(D) (appointment of corporation counsel). We find the apparent authority of the Director of the Department of Parks and Recreation and of the Corporation Counsel bind the City. *Herald Telephone v. Fatouros* (1982), Ind.App., 431 N.E.2d 171.[4]

---

**2.** Alternately, Speckman argues the City was obligated to establish just cause before *any* employee could be terminated because the City of Indianapolis Personnel Policies and Procedure Manual requires just cause for discharge and the Manual is a set of "rules adopted by the executive" (Mayor) under I.C. 36-3-5-5(C)(1) which provides department directors may approve dismissal of personnel *"subject to rules a adopted by the executive."* Because of our disposition of Speckman's first argument, we need not reach this claim.

**3.** I.C. 18-1-6-2 is no longer in effect.

**4.** We recognize that generally the public, whether it be a state or local governmental body, cannot be estopped by the unlawful acts of

public officials. However, application of the equitable doctrines of estoppel, laches, and waiver have not been absolutely prohibited where the necessary elements are present. Justice DeBruler has stated "... courts may invoke an equitable estoppel against the State in an appropriate case." *Middleton Motors, Inc. v. Indiana Department of State Revenue* (1978), 269 Ind. 282, 380 N.E.2d 79 (J. DeBruler, dissenting). For a thoughtful discussion of the application of estoppel against the State, *see Cablevision of Chicago v. Colby Cable Corporation* (1981), Ind.App., 417 N.E.2d 348. However, the City does not argue that either the Director of the Department of Parks and Recreation or the Corporation Counsel have acted unlawfully in negotiating and executing the settlement contract, nor does Speckman argue the

B. *Definite Term*

■ The City argues the settlement agreement is not enforceable because it does not specify a definite term of employment. Speckman correctly asserts this argument is erroneous as a matter of law.

In Indiana, the employment relationship is terminable at-will unless there is a promise of employment for a fixed duration *or* consideration given by the employee in addition to his services. *Streckfus v. Gardenside Terrace Co-Op, Inc.* (1985), Ind. App., 481 N.E.2d 423; *Hamblen v. Danners, Inc.* (1985), Ind.App., 478 N.E.2d 926; *Ryan v. J.C. Penney & Co.* (7th Cir.1980) 627 F.2d 836; *McQueeney v. Glenn* (1980), Ind.App., 400 N.E.2d 806. If an employment contract is supported by adequate independent consideration, other than the employee's promise to render services, it may be enforced even though it does not establish a definite term of employment. *Ryan, supra; Ohio Table Pad Co. of Indiana v. Hogan* (1981), Ind.App., 424 N.E.2d 144. In such cases, if adequate independent consideration was exchanged, "then in the absence of mutual agreement, the company could only terminate the employee for good cause without incurring liability for its action." *Ohio Table Pad, supra.*

To convert employment at-will to employment requiring just cause for termination, independent consideration supplied by the employee, which results in a detriment to him and a corresponding benefit to the employer, must be given in return for permanent employment. In *Ohio Table Pad,* this court examined the types of consideration which would be adequate to take an indefinite contract out of the at-will doctrine:

"Indiana courts early recognized that independent consideration to support a contract of permanent employment existed where the employee surrendered or released a claim for personal injuries he had sustained at the hands of the contract employer. *Carter v. Richart* (1919), 65 Ind.App. 255, 114 N.E. 110; *American Car & Foundry Co. v. Smock*

(1910), 48 Ind.App. 359, 91 N.E. 749, *reh. den.* 48 Ind.App. 371, 93 N.E. 78; *Illinois C.R. Co. v. Fairchild* (1910), 48 Ind.App. 300, 91 N.E. 836, *reh. den.* 93 N.E. 176; *Pennsylvania Co. v. Dolan* (1892), 6 Ind.App. 109, 32 N.E. 802. We have also found independent consideration to exist where the employee assigned a valuable coal lease to the employer in return for the offered employment. *Mt. Pleasant Coal Co. v. Watts* (1926), 91 Ind.App. 501, 151 N.E. 7."

*Ohio Table Pad, supra,* 424 N.E.2d at 146.

In 1985, the Federal District Court for the Southern District of Indiana, applying Indiana law in *Stack v. Allstate Insurance Co.* (1985), 606 F.Supp. 472, reached the same conclusion:

... [in *Ohio Table Pad* ] the court found that consideration sufficient to support the imposition of restrictions on an employer's ability to discharge an employee includes an employee's release of personal injury claims against the employer, an employee's assignment of a valuable coal lease to the employer, an employee abandoning his own competing business, and an employee surrendering his own permanent employment with the express understanding that he would not do so except for permanent employment. *Ohio Table Pad Co. of Ind. v. Hogan,* 424 N.E.2d 144, 146 (Ind.App.1981), and cases cited therein. (Emphasis added).

Speckman argues the Settlement Agreement expressly recognizes his release of liability as sufficient consideration for the City's promise to deal with Speckman pursuant to its Personnel Policies and Procedure Manual and to discharge Speckman only for just cause.

This court recently addressed a similar argument in *Department of Natural Resources v. Evans* (1986), Ind.App., 493 N.E.2d 1295, *trans. denied.* Sherry Evans sued the Department for denying her a political patronage job in breach of a lawsuit settlement agreement arising from political salary kickback litigation. We con-

City should be estopped from denying the validity of the settlement agreement.

cluded that the non-retaliation clause in the settlement agreement included protection against failure to hire and that the Department had bargained away its right to deny Evans employment for political reasons. The Department argued that Evans was not entitled to damages because she applied for an at-will position and relied on *Pepsi-Cola General Bottlers, Inc. v. Woods* (1982), Ind.App., 440 N.E.2d 696. This court reasoned:

> "The general rule that damages are too speculative and uncertain to afford recovery for breach of an at-will employment contract, however, does not apply to Evans. Here, unlike *Pepsi-Cola*, Evans is not attempting to enforce an at-will employment contract, but rather the non-retaliation clause of a settlement contract. Evans would not have been a true at-will employee if hired by the Department. Had she been hired, her employment would have been conditioned by the settlement contract, precluding the Department from taking retaliatory action against Evans. If hired, the Department could have discharged Evans at any time without liability *only if* the Department did not violate the settlement contract in doing so. Thus, the rationale in the *Pepsi-Cola* case—'that a contract is unenforceable if it is so indefinite and vague that the material provisions cannot be ascertained'—is not applicable here where there existed a specific agreement not to retaliate for a specific cause." 440 N.E.2d at 699.

*Evans,* 493 N.E.2d at 1302.

■ We conclude Speckman's release of tort liability regarding his first discharge in 1979 is sufficient independent consideration for the City's promise to deal with him pursuant to its Manual, even though the settlement agreement specifies no definite term of employment and even though Speckman would have been free to termi-

nate his employment at any time. Lack of definite term of employment does not, therefore, render the settlement agreement unenforceable. When the City and Speckman executed the settlement agreement and Speckman returned to work, his employment was conditioned by the settlement contract. The City could discharge Speckman without liability *only if* the City did not violate the settlement contract in doing so.[5]

## C. *Failure to Append City Personnel Manual to Complaint*

■ The City argues Speckman was required by T.R. 9.2[6] to append the City of Indianapolis Personnel Policies and Procedure Manual to his amended complaint. However, the City did not include this argument in its motion to dismiss and strike, nor in its motion to correct errors, and therefore this ground could not have been the basis for the trial court's grant of the motion to dismiss and strike or its denial of the motion to correct errors. We find, therefore, the City has waived consideration of this issue on appeal.

Although we need not decide whether the pleadings are founded upon the City of Indianapolis Personnel Policies and Procedure Manual, we note that our court has set out the proper procedure under T.R. 9.2(F) when a plaintiff fails to comply with T.R. 9.2(A) in *Wilson v. Palmer* (1983), Ind.App., 452 N.E.2d 426. Wilson, the purchaser of home later found to be subject to demolition, sued the vendor, realtor and title company for breach of contract and negligence. Wilson failed to attach the written agreement between the vendor and the title company to his complaint as required by T.R. 9.2(A). Judge Young reasoned:

> "... insofar as Wilson wished to state claims for negligence or breach of contract, T.R. 9.2(A) required him to append

---

**5.** We need not determine the terms of the settlement contract or whether it has been breached. We leave that task to the trial court on remand.

**6.** Trial Rule 9.2(A) provides:
(A) When Instrument or Copy Must Be Filed. When any pleading allowed by these rules is founded on a written instrument, the original, or a copy thereof, must be included in or filed with the pleading. Such instrument, whether copied in the pleadings or not, shall be taken as part of the record.

the written contract to his complaint. It is undisputed that he did not do so. Wilson's failure to comply with the pleading requirements of T.R. 9.2(A) did not, however, warrant dismissal of his complaint against Commonwealth. It is true that, prior to the adoption of the Trial Rules, a complaint that did not include the written instrument upon which it was founded "was subject to demurrer for failure to state a cause of action." Civil Code Study Commission Comments, 1 W. HARVEY, INDIANA PRACTICE 571 (1969) (citing *Williamson v. Foreman,* (1864) 23 Ind. 540, and *Bullington v. Garrett,* (1931) 93 Ind.App. 272, 178 N.E. 186). Under the Trial Rules, however, the effect of noncompliance with T.R. 9.2(A) is governed by T.R. 9.2(F):

> Non-compliance with the provisions of this rule requiring a written instrument to be included with the pleading may be raised by the first responsive pleading or prior motion of a party. The court, in its sound discretion, may order compliance, the reasons for noncompliance to be added to the pleadings, or allow the action to continue without further pleading. Amendments to correct the omission of a required written instrument ... as permitted or required by this rule shall be governed by Rule 15, except as provided by subdivision (A) of this rule.

Under this subpart, to correct the omission of an essential written instrument, the court should specifically order the plaintiff to comply with T.R. 9.2(A) by amending his complaint to include the omitted instrument. Further, although the rule does not address the issue, it seems clear that if the plaintiff fails to amend his complaint as ordered within a reasonable time the complaint should be dismissed, after a hearing, pursuant to T.R. 41(E). Thus, the appropriate procedure is similar to that under T.R. 12(E), which allows the court to strike a party's

pleading upon failure to comply with a court order to make a more definite statement. *See Yaksich v. Gastevich,* (1982) Ind.App., 440 N.E.2d 1138 (dismissal for noncompliance with T.R. 12(E) governed by T.R. 41(E)). Dismissal in such a case is not for failure to state a claim for relief but for failure to comply with the rules and court orders thereunder. *See Farinelli v. Campagna,* (1975) 166 Ind.App. 587, 338 N.E.2d 299."

*Wilson,* 452 N.E.2d at 429–430.

Even if Speckman's complaint were founded upon the City Personnel Policies and Procedure Manual, and Speckman had omitted this instrument, the trial court should have specifically ordered Speckman to comply with T.R. 9.2(A) by amending his complaint to include the Manual.

■ We conclude Count II of Speckman's complaint may support a claim for breach of contract. Nothing in Speckman's complaint shows to a certainty that he cannot recover. Thus, the trial court erred in finding Count II of Speckman's complaint against the City failed to state a claim upon which relief could be granted.

## II. *Procedural Due Process—Property Interest in Continued Employment*

Speckman argues the dismissal of Count III of his amended complaint is erroneous as a matter of law because he established a constitutionally protected property interest in continued employment arising from the Settlement Agreement[7] and therefore the Fourteenth and Fifth Amendments to the United States Constitution require a pretermination hearing. The City asserts Speckman was an at-will employee and therefore the City was free to discharge Speckman for any reason or for no reason.

The City relies upon *McQueeney v. Glenn* (1980), Ind.App., 400 N.E.2d 806, *cert. den.,* 449 U.S. 1125, 101 S.Ct. 943, 67 L.Ed.2d 112 as support for its claim that

---

**7.** Alternately, Speckman argues he has a property interest in continued employment flowing from I.C. 36–3–5–5(C)(1) which requires department directors to follow the Mayor's Rules in discharge. Speckman claims the Personnel Manual, which is signed and promulgated by the Mayor, constitutes "Mayor's Rules" and requires just cause for discharge. Because of our disposition of Speckman's first argument, we need not reach this question.

at-will employees have no constitutionally protected property interest in continued employment. Ms. McQueeney was employed as a secretary to the assistant superintendent of schools in a public school corporation. After a new superintendent was hired, conflict arose between the new superintendent and McQueeney's boss. Her boss was demoted and reassigned. Conflict then arose between McQueeney and the superintendent, who gave her the option of transfer or termination. McQueeney elected termination, then sued alleging she was discharged without a hearing, in contravention of the employee handbook and Fourteenth Amendment due process protections. *McQueeney* however, is readily distinguishable from the case at bar. McQueeney was not employed for a definite term, had no written employment contract, and had not provided separate independent consideration in exchange for treatment according to the employee handbook. McQueeney was an at-will employee. In contrast, Speckman is not an employee at-will because he did provide adequate, separate and independent consideration to the City pursuant to a written contract in exchange for the protection provided in the Personnel Manual.

■ In order for Speckman to avail himself of due process protections, he must first show that he had some property interest which was protected by procedural due process. This property interest may arise from a statute, ordinance, or contract and the sufficiency of the claim or entitlement to such a property interest must be decided by reference to state law. *McQueeney, supra,* 400 N.E.2d at 810; *Gansert v. Meeks* (1979), 179 Ind.App. 209, 384 N.E.2d 1140. Indiana law is settled that an at-will employee does not have a cognizable property interest in continued employment. *McQueeney, supra,* 400 N.E.2d at 811; *Shaw v. S.S. Kresge* (1975), 167 Ind.App. 1, 328 N.E.2d 775. Due process protection attaches when cause is required before an employment relationship may be altered to the detriment of the employee. *McQueeney, supra,* 400 N.E.2d at 810. Speckman has alleged a state law contract right, arising from the settlement agreement, to continued employment. He presents a bona fide claim precluding T.R. 12(B)(6) dismissal and is entitled to the opportunity to prove the legitimacy of his claim of entitlement to protection by procedural due process in light of his allegations that the settlement agreement established his right to continued employment pursuant to the City's Policies and Procedure Manual.

### III. *Procedural Due Process—Liberty Interest in Good Name and Reputation*

Speckman argues his amended complaint alleged facts which established a constitutionally protected liberty interest in his good name, reputation, honor and integrity, which the City could not deprive him of without the due process of a pre-termination hearing required by the federal due process clause. Speckman alleged he was wrongfully discharged for "unlawful or negligent handling of public monies"; City agents made false statements to the news media and to other City employees that the reason for Speckman's discharge was that he had engaged in dishonest and/or criminal activity; these statements damaged his good name, reputation, honor, and integrity; and, he was not afforded a pre-termination hearing at which he had the opportunity to clear his name and prevent deprivation of this liberty interest. The City maintains Speckman was an at-will employee and therefore has no liberty interest which requires a pre-termination hearing.

Speckman relies on *Town of Speedway v. Harris* (1976), 169 Ind.App. 100, 346 N.E.2d 646. In *Speedway*, Michael Harris was employed as a probationary fireman by the Speedway Fire Department and received a copy of the "Rules and Regulations of the Speedway Fire Department", which requires a pre-termination hearing before discharge. Eleven months after he began work, Harris was discharged by the Fire Chief. No pre-termination hearing was held. On the day of his discharge, Harris notified the President of the Speedway Board of Trustees that he had not been afforded a pre-termination hearing as required by the Rules. The following day,

the Board President attempted to arrange for a hearing when Harris telephoned to inform him that Harris' attorney advised him not to participate in a hearing. Harris sued for wrongful discharge and denial of a pre-termination hearing. The trial court reinstated Harris with back wages. The Court of Appeals reversed in this unusual fact situation, holding that although Harris had a due process property interest in continued employment arising from the Rules and Regulations, and was therefore entitled to a pre-termination hearing, he had waived his due process rights when he denied the town board an opportunity to minimize his constitutional deprivation and prevent future damages to the public by his refusal to attend the hearing offered by the Board on the day after his dismissal. We find *Speedway* inapplicable to the facts of this case. Speckman did not inform the City on the day of his discharge, or at any time before filing this suit, that his settlement contract required a pre-termination hearing. The City did not offer Speckman an immediate post-termination hearing, and Speckman did not waive his right to a hearing by refusing to participate in an offered hearing.

The Supreme Court held, in *Wisconsin v. Constantineau* (1971), 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515,[8] that "where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Id.* at 437, 91 S.Ct. at 510. Constantineau challenged a Wisconsin statute authorizing the sheriff to have posted in liquor outlets a notice prohibiting the sale or gift of liquor to individuals who, by excessive drinking, produced described conditions or exhibits specified traits, such as exposing herself or her family to want, or becoming dangerous to the community. The Supreme Court held the statute constituted a denial of procedural due process and was unconstitutional in the absence of a provision for notice or hearing prior to such posting. Due process protections came into play because the State had attached a "badge of infamy" to the individuals named in the posting. The official branding with an unsavory label required an opportunity for Constantineau to defend herself to determine the basis and legality of the Sheriff's action, and to avoid significant limitation of her associational or employment opportunities.

In a later case, *Paul v. Davis* (1976), 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405, the Supreme Court found the *Constantineau* rule inapplicable and confined due process protection of liberty interest to situations in which the State inflicts damage to a government employee's good name, reputation, honor, or integrity in the process of terminating his employment. Paul, whose name and photograph appeared on a flyer captioned "Active Shoplifters" which was distributed by police chiefs to merchants, was not deprived of any liberty or property rights secured against state deprivations by the due process clauses. The Supreme Court held that reputation *alone* does not implicate liberty or property interests and something more than simple defamation by the state officials must be involved to establish a claim under Section 1983 and the due process clauses. Paul had no state legal guarantee of present enjoyment of reputation which was altered as the result of the police chief's action.

The Supreme Court again addressed these issues in *Bishop v. Wood* (1976), 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684. Bishop, a North Carolina police officer, was discharged and brought action against the city, the city manager, and the chief of police. The district court found state law provided Bishop held his position "at the will and pleasure of the City", so that his discharge without a hearing did not deprive him of a protected property interest. The city manager informed Bishop orally of the reason for his discharge but this information was never made public. During pretrial discovery, Bishop was informed that his dismissal was based upon failure to follow certain orders, poor attendance at police training classes which caused low

---

**8.** *See also Goss v. Lopez* (1975), 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725; *Jenkins v. McKeithen* (1969), 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404.

morale, and conduct unsuited to an officer. Bishop argued that the false reasons given for his discharge were so serious that they constitute a stigma severely damaging his reputation in the community. The Supreme Court reasoned:

"In *Board v. Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548, we recognized that the nonretention of an untenured college teacher might make him somewhat less attractive to other employers, but nevertheless concluded that it would stretch the concept to far 'to suggest that a person is deprived of "liberty" when he simply is not rehired in one job but remains as free as before to seek another.' *Id.* at 575, 92 S.Ct. at 2708. This same conclusion applies to the discharge of a public employee whose position is terminable at the will of the employer *when there is no public disclosure of the reasons for the discharge.* In this case *the asserted reasons* for the City Manager's decision *were communicated orally to the petitioner in private and also were stated in writing in answer to interrogatories* after this litigation commenced. Since the former communication was not made public, it cannot properly form the basis for a claim that petitioner's interest in his 'good name, reputation, honor, or integrity' was thereby impaired. And since the latter communication was made in the course of a judicial proceeding which did not commence until after petitioner had suffered the injury for which he seeks redress, it surely cannot provide retroactive support for his claim."

(emphasis added). *Bishop,* 426 U.S. at 348, 96 S.Ct. at 2079.

■ Here, Speckman has alleged the settlement agreement is an enforceable contract which governs his employment with the City, and that City officials publicly disclosed defamatory reasons for his discharge. After review of the above cases, we conclude Speckman has alleged a cognizable claim in Count IV of his complaint precluding T.R. 12(B)(6) dismissal and is entitled to the opportunity to prove the legitimacy of his claim to due process protection.

CONCLUSION

We reverse the trial court's grant of the City's Combined Motion to Dismiss and to Strike, and remand with instructions to reinstate Counts II, III, and IV of Speckman's amended complaint and those allegations contained in Count I which are incorporated in Counts II, III and IV of the amended complaint. Since Speckman voluntarily dismissed Count I with prejudice, he has waived any error with respect to interlocutory rulings involving that Count.

RATLIFF, C.J., and CONOVER, P.J., concur.